14-2163-cr
U.S. v. Pattee

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT

_____

August Term, 2015

(Argued: January 29, 2016          Decided: April 21, 2016)

Docket No. 14-2163-cr

_____

UNITED STATES OF AMERICA,

*Appellee*,

— v. —

BRADLEY W. PATTEE,

*Defendant-Appellant*.

_____

B e f o r e:

CALABRESI, LYNCH, and LOHIER, *Circuit Judges.*

_____

Bradley W. Pattee appeals from a judgment of conviction on several counts of producing, distributing and possessing child pornography, and from his sentence principally to 47 years' imprisonment, arguing that the court's failure to comply fully with Federal Rule of Criminal Procedure 11 requires us to vacate his plea of guilty to production, distribution, and possession of child pornography, and that the sentence imposed by the district court is procedurally and substantively unreasonable. The district court's unobjected-to failure to comply

strictly with all aspects of Rule 11 was not plain error affecting substantial rights, and Pattee's admission that the hard drives on which the child pornography was found had traveled in interstate commerce provided sufficient factual basis to meet the commerce element of the child pornography production statute, so we find no reason to vacate the plea. The district court did not commit procedural error in connection with his sentence, nor was the sentence substantively unreasonable given the serious nature of Pattee's crime. We therefore AFFIRM the judgment of the district court.

————————

CHARLES F. WILLSON, Federal Public Defender's Office, District of Connecticut, Hartford, CT, *for* Defendant-Appellant Bradley W. Pattee.

JOSEPH J. KARASZEWSKI, Assistant United States Attorney, Of Counsel, (Warren W. Griffin, Student Law Clerk, *on the brief*), *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Buffalo, NY.

————————

GERARD E. LYNCH, *Circuit Judge*:

Defendant-appellant Bradley W. Pattee appeals from a judgment of conviction, entered in the United States District Court for the Western District of New York (Frank P. Geraci, Jr., *C.J.*) following his plea of guilty to one count of producing child pornography, in violation of 18 U.S.C. § 2251(a); four counts of distributing child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A); and eight counts of possessing child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), and from his sentence principally to 47 years' imprisonment.

2

He argues on appeal (1) that his plea was invalid because in accepting his guilty plea the district court failed to adhere strictly to Rule 11 of the Federal Rules of Criminal Procedure and because there was insufficient factual basis for finding the interstate commerce element of the production of child pornography count satisfied, and (2) that his sentence is procedurally and substantively unreasonable. We conclude that the failure to comply strictly with all aspects of Rule 11 was not plain error affecting Pattee's substantial rights, that there was sufficient factual basis for the plea, and that there was no procedural or substantive error in his sentence, and therefore affirm the judgment of the district court.

## BACKGROUND

In April 2012, after using a peer-to-peer file sharing program to retrieve images constituting child pornography from an IP address associated with Pattee, law enforcement officers obtained a search warrant for Pattee's residence. During the ensuing search Pattee admitted to an officer that he had downloaded and viewed child pornography. The authorities ultimately recovered over 7,000 images and at least 17 videos depicting child pornography from seven hard drives seized during the search. Additionally, photographic evidence on the

hard drives tended to show that Pattee had sexually abused a child who lived in a neighboring apartment and had photographed the abuse. The victim later confirmed that Pattee had abused her over a period of approximately two years, while she was six to seven or eight years old, and photographed his actions.

Pattee was arrested on July 20, 2012, and appeared before a magistrate judge with retained counsel. The magistrate judge advised Pattee of "important rights in connection with the charges that are pending against you. First and most importantly, you have the right to the assistance of a lawyer. If you cannot afford to hire a lawyer, you have the right to ask the Court to appoint a lawyer for you." Transcript of Proceedings at 4 (Docket No. 67).[1]

An indictment followed, charging Pattee with the various counts of producing, distributing, and possessing the child pornography described above. At Pattee's arraignment, the magistrate judge ordered a continuance and exclusion of time under the Speedy Trial Act, so that Pattee and his attorney would have sufficient time to prepare and file motions "and to assure that Mr.

---

[1] Transcripts of proceedings in the district court not found in the parties' appendices are identified by the docket entry number for that transcript on the docket of the district court case, *United States v. Pattee*, No. 12-CR-6183-FPG-JWF (W.D.N.Y. Dec. 13, 2013).

Pattee has the continued assistance of counsel throughout that process."

Transcript of Proceedings at 7 (Docket No. 65).

Pattee moved through counsel to suppress his incriminating statements and the evidence recovered from his residence, and in due course the district court denied the motion. The government moved to set a trial date, and a conference for that purpose was held on December 20, 2013.

At the December 20 hearing, Pattee's retained counsel advised the district court that because Pattee did not have sufficient funds to retain him for trial or to hire a forensic expert necessary for his defense, Pattee wished to apply for appointed counsel pursuant to the Criminal Justice Act ("CJA"). The court directed Pattee to file a financial affidavit in order to establish his financial eligibility for assigned counsel under the CJA, and adjourned the matter until January 6, 2014.

On January 6, the district court reviewed the financial affidavit and questioned Pattee regarding, among other things, gold coins found during the search of his residence and the possibility of obtaining information regarding Pattee's assets from Pattee's brother and longtime girlfriend. The court then adjourned the matter until January 30, 2014 for further inquiry, noting that "the

5

interest of justice and the defendant having counsel for this matter . . . outweighs the interest of the public in a speedy trial." Transcript of Proceedings at 12 (Docket No. 61).

At the hearing on January 30, 2014, Pattee's counsel advised the court that Pattee wished to change his plea to guilty to all counts of the indictment. The district court scheduled the plea hearing for the next day, and instructed the government to file a statement pursuant to *United States v. Pimentel*, 932 F.2d 1029 (2d Cir. 1991), regarding the government's expectations as to the guideline sentencing range.

On January 31, 2014, the district court held the plea hearing. The court specifically questioned whether Pattee understood that it was the government's burden to prove all elements of the charges beyond a reasonable doubt, that he had a right to proceed to trial, and that by pleading guilty he was "giving up" his right to a trial, "to have the prosecution prove these charges beyond a reasonable doubt," "to allow [his] attorney to cross-examine witnesses on [his] behalf," and "to testify or produce evidence on [his] behalf," and received Pattee's affirmation

6

that he did. D.A. 10.[2] The district court further assured that Pattee understood that "your plea of guilty is the same as if we had a bench trial or a jury trial and there was returned against you a verdict of guilty." *Id.* at 10–11. Pattee also affirmed that he had not been forced or coerced in any way to plead guilty.

The district court also discussed with Pattee other matters not specifically required by Rule 11. For example, the court asked whether Pattee was satisfied with his retained counsel's representation, to which Pattee replied that he was, and whether he had any mental or physical condition which affected his ability to knowingly plead guilty, to which Pattee replied that he did not. Moreover, the court specifically inquired about an incident in the county jail, in which Pattee apparently had attempted suicide, and asked whether that was "in any way affecting [his] ability to understand anything that's occurring." *Id.* at 4. Pattee replied that it was not.

Regarding the child pornography production charge, Pattee stated that he understood the elements of the crime, including "that the visual depiction was produced using materials that had been mailed, shipped or transported in

---

[2] The Defendant's Appendix and Government's Appendix are cited as "D.A." and "G.A." respectively.

interstate or foreign commerce." *Id.* at 8–9.  The court reviewed the factual basis for the plea, relying primarily on the government's *Pimentel* letter.  Regarding the production count, Pattee admitted that he engaged in the prohibited conduct with a child, took photographs of the child engaged in the conduct, and "stored the images on digital media that [he] possessed." *Id.* at 11.  Pattee acknowledged that "the digital media, including the desktop computer and the seven external hard drives, were produced outside the State of New York." *Id.* at 14.

The district court reviewed the sentencing guidelines calculations contained in the *Pimentel* statement, advised Pattee of the statutory minimum and maximum sentences, and established that Pattee understood that "the ultimate sentence can be up to the Court just as long as you understand it can't be below the 15 years, but could be as high as the 190 years." *Id.* at 22.  Pattee then pled guilty to all counts of the indictment.  The district court found that Pattee's plea was "in all respects knowing and voluntary" and accepted the plea. *Id.* at 30.  Pattee's counsel did not object to any deviation from the requirements of Rule 11, nor did he seek or receive permission to reserve the right to appeal the denial of the suppression motion.

In preparation for sentencing, the Probation Office prepared a pre-sentence

8

report pursuant to 18 U.S.C. § 3552(a), which concluded that the statutory sentencing range was, as the district court had advised Pattee at the allocution proceeding, 15 to 190 years in prison. In its written sentencing statement, the government urged the district court to impose the maximum 190-year sentence, because of Pattee's extended abuse of a child and the volume of pornographic images he had produced, distributed and possessed. Pattee asked the court to impose the statutory minimum of 15 years.

During the sentencing hearing, the district court commented on Pattee's healthy relationships with his adult girlfriend and family, his lack of substance abuse issues, and his lack of a criminal record. But the court described Pattee's actions as "despicable conduct" that was "beyond comprehension." G.A. 55. The court commented on the enormous harm to Pattee's victim, as well as the seriousness of the distribution and possession of child pornography, because the photographed children are "victimized every time somebody looks at those photos." *Id.* at 55–56. The court also noted the volume of child pornography in Pattee's possession, and his deliberate attempt to evade detection by the use of encryption. Concluding that "this is really an egregious case and an egregious situation that deserves a severe sentence," *id.* at 60, the court sentenced Pattee to

9

a total of 47 years in prison: 5-year consecutive terms for each of the four distribution counts, a consecutive 20-year sentence for the production count, plus 7-year terms for the possession counts, to run concurrent to each other, but consecutive to the distribution and production sentences.

## DISCUSSION

Pattee argues that his guilty plea was invalid due to the asserted defects of the plea proceedings and the lack of a factual basis for his plea to the production of child pornography count. He also argues that his sentence was procedurally and substantively unreasonable. We disagree.

## I. The District Court's Failure to Adhere Strictly to Rule 11 Was Not Plain Error.

Rule 11 of the Federal Rules of Criminal Procedure explicitly requires a court, before accepting a plea of guilty, to inform the defendant of a number of specified matters. *See* Fed. R. Crim. P. 11(b)(1)(A)-(N). Rule 11 is "designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *United States v. Maher*, 108 F.3d 1513, 1520 (2d Cir. 1997).

Pattee correctly points out that the district court omitted five of the approximately fifteen rights of which a court is required to advise a defendant

before accepting a guilty plea: the right to persist in a not guilty plea (Rule 11(b)(1)(B)); the right to trial by jury (Rule 11(b)(1)(C)); the right to be represented by counsel, including appointed counsel if necessary (Rule 11(b)(1)(D)); and the rights to be protected from compelled self-incrimination and to compel the attendance of witnesses (Rule 11(b)(1)(E)).

Rule 11 was originally both stricter and simpler. In its original form, Rule 11 was only three sentences long, and contained no harmless error provision. It provided, in full:

> A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*. The court may refuse to accept a plea of guilty, and shall not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty.

Fed. R. Crim. P. 11, 327 U.S. 842 (1945); *see generally* Julian A. Cook III, *Federal Guilty Pleas Under Rule 11: The Unfulfilled Promise of the Post-Boykin Era*, 77 Notre Dame L. Rev. 597, 606–07 (2002).

The 1975 amendments to the Rule "increased significantly the procedures which must be undertaken when a defendant tenders a plea of guilty," Fed. R.

11

Crim. P. 11, Advisory Comm. Note (1983), and added what are now sections (b)(1)(B)–(F) to the Rule, specifying particular information that must be provided to the defendant. Since then, additional required topics have been added to the list, resulting in the present text of Rule 11(b)(1)(A)–(N). A harmless error provision was added in 1983 to avoid reversals for "inadvertent[] deviat[ions] . . . which a very literal reading of Rule 11 would appear to require." *Id.*; *see* Fed. R. Crim P. 11(h). Rule 11(h) "was enacted to make clear that guilty pleas should not be overturned, even on direct appeal, when there has been a minor and technical violation of Rule 11 which amounts to harmless error." *United States v. Westcott*, 159 F.3d 107, 112 (2d Cir. 1998) (internal quotation marks omitted). Moreover, the Supreme Court has held that when a defendant has failed to object in the district court to a violation of Rule 11, reversal is appropriate only where the error is plain and affects the defendant's substantial rights. *United States v. Vonn*, 535 U.S. 55, 58–59 (2002).

This Court has stated time and again that "[w]e have 'adopted a standard of strict adherence to Rule 11.'" *United States v. Rodriguez*, 725 F.3d 271, 277 n.3 (2d Cir. 2013), quoting *United States v. Livorsi*, 180 F.3d 76, 78 (2d Cir. 1999). But since "strict adherence" is subject to harmless error (and, in the absence of

12

objection, plain error) review, our scrutiny is strict only at the level of assessing compliance, and does not frequently require vacatur of a plea. In the absence of an objection (which is the usual situation on appeal, since district courts will ordinarily correct any error that is pointed out to them), deviations from Rule 11 will not warrant appellate relief when the defendant's "substantial rights" have not been affected. Still, a district court's failure to follow the basic requirements of Rule 11 requires that this Court "examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights has been compromised." *Rodriguez*, 725 F.3d at 277 n.3, quoting *Livorsi*, 180 F.3d at 78. Thus, district court judges are required to adhere strictly to Rule 11's requirements.

Luckily, compliance with Rule 11 is not a difficult task. The decision to follow the Rule is not a discretionary decision, nor a judgment call that a district court must make quickly and under pressure. Technical errors can be avoided if a district or magistrate judge has a standard script for accepting guilty pleas,

which covers all of the required information.[3] We have repeatedly so advised

district courts in previous cases. As we noted in *Rodriguez*, "it should be a simple

matter for district and magistrate judges to avoid any error by adhering literally

to the script required by the Rule, and for prosecutors and defense counsel to be

aware of the Rule's requirements and point out to the court any failure to follow

them." *Id*.

Yet failures to meet those requirements are a recurring issue. During 2015,

this Court heard at least two appeals that could have been avoided had the

district court adhered to the Rule. *See United States v. Glass*, 613 F. App'x 75,

77–78 (2d Cir. 2015) (summary order) (vacating and remanding because "the

District Court did not conduct the required voluntariness inquiry" and "[e]ven

the government conceded . . . that the court's Rule 11 canvass of the defendant

was facially deficient") (internal quotation marks omitted); *United States v.*

---

[3] As we noted in *United States v. Khan*, "Rule 11 does not require the court to 'read the specified items *in haec verba*. Congress meant to strip district judges of freedom to decide *what* they must explain to a defendant who wishes to plead guilty, not to tell them precisely *how* to perform this important task in the great variety of cases that would come before them.'" 857 F.2d 85, 87 (2d Cir. 1988) (alterations omitted), quoting *United States v. Saft*, 558 F.2d 1073, 1079 (2d Cir. 1977). But this flexibility presumes that the essential rights in Rule 11 *will* be covered in the plea colloquy, and judges can assure that by devising their own scripts.

*Germosen*, 605 F. App'x 16, 19 n.1 (2d Cir. 2015) (summary order) ("Although the district court noted during [the defendant's] plea allocution that in entering into the plea agreement he waived his right to appeal the sentence, the court failed to note, as required by Federal Rule of Criminal Procedure 11(b)(1)(N), that the appeals waiver also covered fines and the terms of supervised release."); *see also United States v. Hightower*, 589 F. App'x 22, 24 (2d Cir. 2014) (summary order) (assuming without deciding "that the district court should have explained the implications of violating supervised release," but finding that the error was harmless); *United States v. Choudhury*, 582 F. App'x 25, 26 n.1 (2d Cir. 2014) (summary order) ("Both parties agree that, following [the defendant's] guilty plea in front of the Magistrate Judge, the District Court failed to formally accept [the defendant's] plea. While [the defendant] is not challenging his conviction on this basis, we take this opportunity to remind district judges of their responsibility to accept guilty pleas prior to sentencing.").

These failures are not attributable solely to judges. Prosecutors and defense attorneys also have an obligation to make sure that the Rule is followed. Defense attorneys have an obligation to ensure that their clients are fully informed of their rights before entering a plea of guilty, and that a plea that is in

15

the client's interest is properly entered. It is therefore part of counsel's responsibility, and is in the client's interest, to object if all elements of Rule 11 are not covered. The government also has an interest in assuring that the plea proceeding is done correctly, both to protect the defendant's rights in the interest of justice, and to protect the record and avoid time-consuming appeals by defendants who subsequently suffer "buyer's remorse" and wish they had not pled guilty. Therefore, prosecutors too should alert the judge to any provisions that have been missed.

Incanting rights and eliciting affirmative answers as required by the Rule goes only so far in assuring that a defendant really understands what is at stake. And the issues that are relevant to each defendant in making the choice whether to plead may differ in ways not captured by the Rule. Because even strict adherence to Rule 11 may not cover every issue that may be relevant to assessing a particular defendant's understanding, district and magistrate judges must be alert to ways to go beyond rote recitals, in order to make sure that the defendant's waiver of rights is truly knowing and voluntary. The Rule's list of required elements of a guilty plea proceeding should serve as a baseline and a

16

trigger to seek out additional issues relevant to the particular defendant.[4]

Nevertheless, Rule 11, with its list of elements that the Supreme Court and Congress have determined should be addressed with every defendant, constitutes a required minimum in assuring that a defendant understands the nature of the charges, the penalties he faces, and the rights that he is giving up by entering a plea. Compliance with the Rule's requirements should be automatic.

While we are certain, as discussed below, that in this case the deficiencies in the Rule 11 colloquy did not affect Pattee's decision to plead guilty, it is nevertheless disturbing that district courts do not routinely follow the minimal procedures put in place to protect defendants' rights. While the plain error standard typically addresses the situation of individual defendants, an element of plain error review is whether "the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *United States v. Youngs*, 687 F.3d 56, 59 (2d Cir. 2012) (internal quotation mark omitted), quoting *United States v. Flaharty*, 295 F.3d 182, 195 (2d Cir. 2002). A recurring pattern of failure by a

---

[4] In this case, for example, the district court, aware of an incident during pretrial detention that may have reflected on Pattee's mental or emotional state, commendably went beyond a simple inquiry into whether the defendant's mind was clear, to probe whether that incident was a sign of on-going difficulties.

district judge to comply with Rule 11 could undermine faith in the judiciary.

In the instant case, Pattee made no objection to the district court's compliance with Rule 11. We therefore review Pattee's present claims of defective compliance under the plain error standard. *See* Fed. R. Crim. P. 52(b); *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006). "Plain error review requires a defendant to demonstrate that (1) there was error, (2) the error was plain, (3) the error prejudicially affected his substantial rights, and (4) the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Youngs*, 687 F.3d at 59 (internal quotation mark omitted), quoting *Flaharty*, 295 F.3d at 195.

In order to establish that a Rule 11 violation affected "substantial rights," the defendant must show "that there is 'a reasonable probability that, but for the error, he would not have entered the plea.'" *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005), quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). If "the misinformation in all likelihood would not have affected a defendant's decision-making calculus, then the error would be harmless, and the guilty plea need not be vacated." *United States v. Harrington*, 354 F.3d 178, 184 (2d Cir. 2004). In short, Pattee must show that "the district court's error had an effect

18

on his decision to plead guilty." *United States v. Harrison*, 241 F.3d 289, 293 (2d Cir. 2001).

Pattee asks this Court to vacate his plea of guilty because the district court erred in not informing him of all of his rights under Rule 11 and alleges that but for this error, he would "have pressed forward either to a trial, or at a minimum, sought to preserve certain issues for appeal." Appellant's Br. 18. Pattee, however, offers no evidence other than this bare assertion that the errors in the plea allocution affected his decision to plead guilty.[5]

At the plea hearing, the court conducted the following colloquy, as relevant to this issue:

> THE COURT: Do you understand if you went to trial on these charges, that it would be up to the Government to prove all those elements beyond a reasonable doubt?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that you have a right to proceed to trial on these charges?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that when you plead guilty, you're giving up that right?

---

[5] Pattee echoes this assertion in an affidavit he submitted with his reply brief. The government urges us to disregard the affidavit on technical grounds. But even assuming the affidavit is now properly part of the record on appeal, our conclusions regarding Pattee's plea remain the same.

THE DEFENDANT: Yes.
THE COURT: Do you understand that by
pleading guilty, you're giving up your right to
have the prosecution prove these charges beyond
a reasonable doubt?
THE DEFENDANT: Yes.
THE COURT: That you're giving up your right to
allow your attorney to cross-examine witnesses
on your behalf?
THE DEFENDANT: Yes.
THE COURT: That you're giving up your right to
testify or produce evidence on your behalf?
THE DEFENDANT: Yes.
THE COURT: Do you understand that your plea of
guilty is the same as if we had either a bench trial or a
jury trial and there was returned against you a verdict
of guilty? Do you understand that?
THE DEFENDANT: Yes.

D.A. 10–11.

As previously noted, however, the district court failed to specifically

address the following Rule 11 requirements during the colloquy:

> (B) the right to plead not guilty, or having already so
> pleaded, to persist in that plea;
> (C) the right to a jury trial;
> (D) the right to be represented by counsel – and if
> necessary have the court appoint counsel – at trial and
> at every other stage of the proceeding;
> (E) the right at trial . . . to be protected from compelled
> self-incrimination, . . . and to compel the attendance of
> witnesses; [and]

20

Fed. R. Crim. P. 11(b)(1)(B)–(E).

Although Pattee argues that the sheer number of omissions should affect our review, he primarily emphasizes the omission of the advice that he had a right to counsel at every stage of the proceedings. He points to the appearances before the court in which his counsel informed the court that Pattee could not afford to retain counsel for the trial as evidence that Pattee may have been concerned that if he did not plead guilty, he would be forced to trial without the assistance of counsel.

In the context of the entire record, however, *see Vonn*, 535 U.S. at 74–76 (holding that a court should consult the entire record in conducting plain error review), the contention that Pattee was not aware of his right to counsel is unpersuasive. Pattee was represented by retained counsel throughout the proceedings. At his first appearance, the magistrate judge advised Pattee that "you have the right to the assistance of a lawyer. If you cannot afford to hire a lawyer, you have the right to ask the Court to appoint a lawyer for you." Transcript of Proceedings at 4 (Docket No. 67). At Pattee's arraignment, the magistrate judge granted a continuance, in part "to assure that Mr. Pattee has the continued assistance of counsel throughout that process." Transcript of

21

Proceedings at 7 (Docket No. 65). The district court later granted an extension of time to file the financial affidavit, because "the interest of justice and the defendant having counsel for this matter . . . outweighs the interest of the public in a speedy trial." Transcript of Proceedings at 12 (Docket No. 61).

Most tellingly, the proceedings leading up to the plea hearing were focused on assessing Pattee's income *for the purpose of appointing an attorney for him* under the CJA. The record thus makes clear that Pattee knew that he had a right to counsel, and to appointed counsel if he was in fact unable to afford to retain an attorney to represent him. The omission of another reminder of that right during the plea colloquy itself thus could not have affected his decision to plead guilty.

Pattee understandably makes little effort to argue that the other omissions affected his decision to plead guilty. Having already entered a plea of not guilty, Pattee obviously understood that right, and the right to persist in that plea (of which he was not advised) is effectively the converse of his right to proceed to trial (of which he was advised). Pattee does not pretend that he was unaware that the trial to which he had a right would be by jury, nor does he argue that he would have gone to trial had he been told of his right to remain silent at trial (a

22

right closely related to the government's burden of proof, of which he was expressly advised), or his right to compulsory process (a right closely associated with his right to present evidence, of which the district court advised him). We do not denigrate the importance of the district court's compliance with the Rule's command that these rights be expressly discussed with the defendant before a plea of guilty; we merely note that Pattee does not contend that he would not have pled guilty had these rights been explained to him, which, as we held in *Vaval*, is the touchstone for deciding whether the failure to comply with the Rule affected substantial rights. That the district court omitted several of the required items of the colloquy is regrettable, but we have no basis for concluding that Pattee's decision to plead guilty was the result of these omissions, whether taken singly or together.

That is particularly so in light of the strength of the evidence against him. The trial court having denied the suppression motion, the evidence against Pattee was overwhelming, based on the photographic evidence recovered in the search, his own incriminating admissions, and the confirmation by the victim of the criminal acts recorded in the photographic evidence. Pattee was advised of the severe penalties he faced, understood the elements of the charges against him,

and was aware of the strength of the evidence. He had been advised many times of his right to counsel, including appointed counsel if he was unable to afford a retained attorney, and had taken steps to invoke that right. Under these circumstances, there is no rational basis to conclude that, had Pattee only been advised one more time, or more explicitly, of the specific details of the rights associated with the trial that he was knowingly waiving, he would not have chosen to plead guilty and seek leniency by accepting responsibility. The fact that this strategy did not work out to his satisfaction does not render the plea involuntary.

Pattee also argues that his mental health, in particular the fact that he had attempted suicide, affected his ability to make an intelligent and voluntary plea of guilty. At the plea hearing, after Pattee indicated that he was not taking any medication or drugs and that he did not have "any mental or physical condition affecting [his] ability to understand anything that [was] being said," D.A. 3, the Court further inquired into Pattee's mental health.

> THE COURT: Okay. Now, we know you just had
> an incident at the Steuben County Jail; is that
> right?
> THE DEFENDANT: Yes.

> THE COURT: Okay. And I'm aware of that and
> you were transferred to Northern Ohio. Is that in
> any way affecting your ability to understand
> anything that's occurring today?
> THE DEFENDANT: No.

*Id.* at 4.

The obligation to ensure that a defendant who elects to plead guilty does so knowingly and voluntarily is at the heart of Rule 11. As noted above, the original version of Rule 11 required only that the court determine that the plea was "made voluntarily with understanding of the nature of the charge." Fed. R. Crim. P. 11 (1945). That concern remains fundamental. *See* Rule 11(b)(1) (detailing what the defendant must "understand[ ]" about the charges and the effect of the plea); Rule 11(b)(2) (requiring that court determine that the plea is "voluntary"). A defendant's mental status is central to both inquiries; a defendant's impaired mental or emotional capacity can interfere with his ability to understand what he is being told and to exercise rational choice. However, neither Rule 11 nor common sense dictates any particular mode of inquiry for a district or magistrate judge in making this assessment.

The Rule places great weight on the requirement that the district court "must address the defendant personally in open court" in making these

25

determinations. Fed. R. Crim. P. 11(b)(1); *see also* Rule 11(b)(2) (same). The judge who can see and interact with the defendant is in the best position to decide whether the facts and circumstances of the case, or the defendant's demeanor in the courtroom, suggest the need for a deeper-than-usual inquiry into the defendant's mental condition. We discern no abuse of discretion in the court's choices here. The court inquired of defendant as to his mental status and whether he was on medication, and inquired more specifically regarding an incident that might have shed additional light on Pattee's mental health. Nothing more was required, and the questions and answers, as well as the overall record of the plea colloquy, amply support the district court's ultimate conclusion that the plea was entered knowingly and voluntarily.

Finally, Pattee alleges that his retained counsel told him that he could plead guilty and still appeal the suppression motion that had been denied, and upon which his case depended. If Pattee's counsel did tell him that, the advice was incorrect, because the right to appeal the denial of an earlier suppression motion is waived by a guilty plea unless the right to appeal is specifically

reserved,[6] and Pattee's counsel made no attempt during the plea hearing to reserve the right to appeal the district court's denial of the motion.

This alleged error by retained counsel suggests a possible ineffective assistance of counsel claim, which Pattee does not make here. Nor could he on the present record, since Pattee's claim concerns what his attorney advised him in private, and possibly any negotiations that may have been had with the government concerning a possible conditional guilty plea, neither of which is part of the existing record. Pattee may raise such claims by a motion pursuant to 28 U.S.C. § 2255; we intimate no view as to the merits of any such motion. The district court, however, was not required by Rule 11 to inform the defendant that a guilty plea waives his right to appeal non-jurisdictional defects in the proceedings before entry of the plea, including the denial of critical suppression

---

[6] *See* Fed. R. Crim. P. 11(a)(2) ("With the consent of the court and the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a specified pretrial motion. A defendant who prevails on appeal may then withdraw the plea."); *United States v. Coffin*, 76 F.3d 494, 496 (2d Cir. 1996) ("A knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings.").

motions.[7] We note that it would serve the interests of justice, and also the prudential purpose of creating a record that would either expose erroneous advice by counsel before a plea is entered or refute later false claims of such advice, if district and magistrate judges included advice about the effect of a guilty plea on appeal rights in their standard colloquy for guilty plea proceedings, particularly in cases in which the outcome of a suppression motion is largely determinative of the defendant's prospects at trial.

In sum, although the district court did not strictly comply with Rule 11, that deviation from proper procedure did not affect substantial rights because the full record demonstrates that Pattee was aware of the essence of those rights of which he was not specifically advised at the time of his plea, such that the failure to repeat that advice could not reasonably have affected Pattee's decision to plead guilty. There was thus no plain error that would require us to vacate the plea.

---

[7] Rule 11(b)(1)(N) requires the court to advise the defendant of "the terms of any plea-agreement provision waiving the right to appeal or collaterally attack the sentence," but neither that nor any other provision of Rule 11 requires the court to address the effect of the plea on other appeal rights as a matter of law.

**II.    The Record Provides Ample Basis to Support the Court's Determination That There Was a Factual Basis for the Guilty Plea for the Production of Child Pornography Count**.

Pattee next argues that there was not a sufficient factual basis for the child pornography production count, because he made no admission that the pornography was *produced* using equipment that had traveled in interstate commerce, as there was "no mention of cameras or video equipment" in the plea colloquy, Appellant's Br. 23, only an admission that the pornography was stored on hard drives that had traveled in interstate commerce.  Therefore, he argues that the colloquy does not support a finding of a factual basis for the commerce element of the charge of production of child pornography.  We do not agree.

Under Federal Rule of Criminal Procedure 11(b)(3), "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  *See United States v. Culbertson*, 670 F.3d 183, 191 (2d Cir. 2012).  Rule 11(b)(3) requires the district court to "assure itself simply that the conduct to which the defendant admits is in fact an offense under the statutory provision under which he is pleading guilty."  *Maher*, 108 F.3d at 1524 (discussing the predecessor to Rule 11(b)(3), Rule 11(f)).  "In making its factual-basis determination, the court is not required to rely solely on the defendant's own

admissions," *id*, and indeed the district court may turn to statements "of the defendant, of the attorneys for the government and the defense, [or] of the presentence report when one is available," *id.*, quoting Fed. R. Crim. P. 11, Advisory Comm. Note (1974). Even "a reading of the indictment to the defendant coupled with his admission of the acts described in it may provide a sufficient factual basis for a guilty plea where the charge is uncomplicated, the indictment detailed and specific, and the admission unequivocal." *United States v. Garcia*, 587 F.3d 509, 518 (2d Cir. 2009) (internal quotation marks omitted).

Using a minor in the production of child pornography is a federal crime as defined by 18 U.S.C. § 2251(a) under certain circumstances involving interstate commerce. A person commits this crime when the commerce element is satisfied if he "employs, uses, persuades, induces, entices, or coerces any minor to engage in . . . any sexually explicit conduct for the purpose of producing any visual depiction of such conduct." 18 U.S.C. § 2251(a). In Pattee's case, the indictment charged and the government contends that the commerce element was satisfied because the visual depictions of the victim were "produced . . . using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce." 18 U.S.C. § 2251(a). As before, because Pattee failed to object

30

on the basis of a Rule 11 violation, here the alleged insufficiency of the factual basis for the commerce element, we review the claim for plain error. *See Vaval*, 404 F.3d at 151.

"Producing" as it relates to child pornography is defined in 18 U.S.C. § 2256(3) as "producing, directing, manufacturing, issuing, publishing, or advertising." The definition is a starting point, but does not directly answer the question of when "producing" begins and ends. In *United States v. Holston*, we upheld a guilty plea to a violation of § 2251(a) where the plea agreement specified that the video camera and videotapes used to produce the depictions of sexually explicit conduct had been manufactured out of state. 343 F.3d 83, 84 (2d Cir. 2003). That does not entirely resolve the question at hand, because *Holston* did not decide whether the commerce element would have been satisfied if only the videotapes, which are analogous to the hard drives in the instant case, had been manufactured out of state. Our sister circuits have reached this issue, however, and have held that production encompasses more than the device used to capture the image or video. We find their reasoning instructive.

In *United States v. Foley*, the Seventh Circuit addressed a case similar to this one, in which the government contended that the commerce element of § 2251(a)

31

was satisfied by evidence that the two seized hard drives containing the pornography had been manufactured outside the United States. 740 F.3d 1079, 1081–86 (7th Cir. 2014). The government argued that the out-of-state hard drives were materials used to "produce" the pornography. *Id.* at 1081–82. Foley argued, as does Pattee here, that "the hard drives were insufficient to meet the prosecution's burden of proof on the commerce element of the production charges because he had not 'produced' the images using the hard drives. His theory [was] that he produced the images using only a camera and that later transfers of the images to the hard drives were not part of the production process." *Id.* at 1082. Under this theory, "producing" would be interpreted narrowly, "limited to the exact moment in time when the visual depiction of the child is first captured on film or digital medium." *Id.* at 1083. The Seventh Circuit rejected this understanding as overly narrow and inconsistent with the language of the statute, which indicates a broader prohibition on the means of producing child pornography. *Id.* at 1085–86.

The First Circuit reached a similar conclusion in *United States v. Poulin*. There, the defendant argued that the commerce element had not been met where the government did not identify where on the "camera—recording device—disk

continuum" the "production" occurred, and argued that "'production' occurs only in a recording device." 631 F.3d 17, 22 (1st Cir. 2011). The court rejected that argument, finding that "Congress did not intend so technical a definition of the term 'produced' as [the defendant] would have it. . . . Congress intended a broad ban on the production of child pornography and aimed to prohibit the varied means by which an individual might actively create it." *Id.* at 22–23. The court noted that the text of the statute defines "producing" not simply as capturing on film, but as "producing, directing, manufacturing, issuing, publishing, or advertising." *Id.* at 22, quoting 18 U.S.C. § 2256(3).

Returning to the instant case, during Pattee's plea hearing, the district court read the elements of the production count to Pattee, including the interstate commerce element, and assured that he understood them. The court then discussed the factual basis for the production count, that Pattee had "employed, used, persuaded, or coerced . . . a minor child, to engage in sexually explicit conduct," and that he "took photographs of the child engaged in sexually explicit conduct and stored the images on digital media that [he] possessed." D.A. 11. Pattee admitted that he had engaged in this conduct, and also admitted that the

33

"the digital media, including the desktop computer and the seven external hard drives, were produced outside the State of New York." *Id.* at 14.

Pattee argues that because he did not admit that the cameras or video equipment used to produce the images had traveled in interstate commerce, the commerce element has not been met, and that the hard drives cannot have been a part of "producing" the pornography. By this logic, if police discovered a hard drive manufactured out of state containing homemade child pornography, but not the actual camera, the perpetrator would prevail at trial in a prosecution under § 2251(a), because of a lack of proof that the means of production had traveled in interstate commerce, at least unless the government could prove that *all* cameras have traveled in interstate commerce. We agree with our sister circuits, however, that Congress did not limit the "production" of child pornography as prohibited by § 2251(a) to the moment of recording, and that "production" can encompass embodying the images or video in digital media, such as a hard drive or disk.[8]

---

[8] It does not follow from this conclusion, however, that merely transferring or copying a pornographic image that was produced by someone else is tantamount to "producing" child pornography, such that simple possession, which typically involves making a copy of a file to a hard disk or other medium, would qualify as production. A violation of § 2251(a) requires proof that the individual

Finally, Pattee argues that "the statutory provision allowing for the interstate commerce nexus to be met when the pornography is produced with equipment manufactured outside New York is not constitutionally adequate." Appellant's Br. 23. But that argument is foreclosed by *Holston*, in which we held that "[b]ecause much of the child pornography that concerned Congress is homegrown, untraceable, and enters the national market surreptitiously, we conclude that Congress, in an attempt to halt interstate trafficking, can prohibit local production that feeds the national market and stimulates demand, as this production substantially affects interstate commerce." *Holston*, 343 F.3d at 90. That is true even though "the interstate component underpinning the jurisdictional element"—in this case, the hard drives—"is attenuated from the criminal conduct—the production of child pornography—which occurs entirely locally." *Id.* at 89. This case cannot be distinguished in any meaningful way from *Holston*, and Pattee has pointed to no intervening Supreme Court case abrogating our decision. *See Tanasi v. New All. Bank*, 786 F.3d 195, 200 n.6 (2d Cir. 2015) ("A

---

"employed, used, persuaded, induced, enticed, or coerced any minor to engage in . . . sexually explicit conduct," which would not be the case for one who possesses copies of child pornography created by someone else. *See, e.g., Foley*, 740 F.3d at 1085.

subsequent panel is bound by the decisions of a prior panel absent a ruling from the Second Circuit sitting en banc or from the United States Supreme Court."), *cert. denied*, 136 S. Ct. 979 (2016).

Accordingly, the district court's determination that there was a sufficient factual basis for the plea was correct.

## III.    Pattee's Sentence Was Not Procedurally or Substantively Unreasonable.

Pattee argues that his effective sentence of 47 years' imprisonment is procedurally and substantively unreasonable because the district court did not conduct a sufficient analysis of the sentencing factors set forth in 18 U.S.C. § 3553(a) or consider the shortcomings that courts have identified in the Guidelines regarding child pornography, and in particular the various enhancements in U.S.S.G. § 2G2.2.  *See, e.g.*, *United States v. Dorvee*, 616 F.3d 174, 184 (2d Cir. 2010).  We reject that argument.

Sentences imposed by the district courts are reviewed by this Court for "reasonableness."  *United States v. Booker*, 543 U.S. 220, 261–62 (2005).  A sentencing court commits procedural error when it fails to calculate (or incorrectly calculates) the Guidelines range, treats the Guidelines as mandatory, fails to consider the sentencing factors set forth in § 3553(a), selects a sentence

based on clearly erroneous facts, or fails to adequately explain the chosen sentence. *United States v. Cavera*, 550 F.3d 180, 190 (2d Cir. 2008) (en banc). We "will . . . set aside a district court's *substantive* determination only in exceptional cases where the trial court's decision cannot be located within the range of permissible decisions." *Id.* at 189 (internal quotation marks omitted).

Regarding procedural unreasonableness, Pattee argues that the district court did not give adequate weight to "the flawed Guideline structure in these types of cases." Appellant's Br. 31. He relies heavily on our decision in *Dorvee*, in which we noted that the sentencing guidelines for child pornography are "fundamentally different from most and that, unless applied with great care, [they] can lead to unreasonable sentences that are inconsistent with what § 3553 requires." 616 F.3d at 184.

But the defendant in *Dorvee* was convicted only of *distributing* child pornography. As serious as that offense is, it is not comparable to the offense here, which included the active use of a minor to engage in sexual activities for the purpose of producing child pornography. To put the matter bluntly, the production count to which Pattee pled guilty is not a crime of looking at or even distributing horrendous images, but is an offense involving the repeated sexual

37

abuse of a pre-pubescent child over a period of two years. The criminal conduct

driving Pattee's sentence was the rape of a child, not simply the possession of

pornographic images, however offensive. Our concern in *Dorvee* about excessive

punishments or cascading enhancements for the possession of multiple images

has little bearing on the calculation of an appropriate sentence in a case of this

nature.

Pattee's further procedural contention that the district court did not

consider the § 3553(a) factors is not borne out by the record. The district court

took great care to discuss the seriousness of the crime, the harm to the victim,

and the need to "deter others from engaging in this conduct and to protect the

public from further conduct by [Pattee] as well." G.A. 60. Each of these factors is

specifically referenced in § 3553(a). A sentencing court does not have to parse

every sentencing factor under § 3553(a), or address each of the defendant's

arguments regarding various factors, for a sentence to be procedurally

reasonable. *United States v. Rigas*, 583 F.3d 108, 119 (2d Cir. 2009).

Regarding substantive unreasonableness, Pattee simply cannot establish

that the sentence of 47 years was outside the permissible range of decisions, nor

was it "shockingly high, shockingly low, or otherwise unsupportable as a matter

of law." *Id*. at 123. Given the circumstances of this offense, particularly the abuse

of a minor child and photographing of that abuse to produce child pornography,

the district court was well within its discretion in imposing a sentence that

effectively amounts to life in prison. Accordingly Pattee's claim of substantive

reasonableness fails.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.