16-4318-cr
*United States v. Gonzales*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2017

(Argued:  January 31, 2018 Decided:  March 13, 2018)

Docket No. 16-4318-cr

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

WINIFREDO GONZALES, AKA FRED, AKA CHIN,

*Defendant-Appellant.*

B e f o r e :

SACK, PARKER, and CARNEY, *Circuit Judges.*

Defendant-Appellant Winifredo Gonzales appeals from a judgment of conviction in the United States District Court for the Western District of New York (Geraci, *C.J.*), arguing that his guilty plea was not knowingly entered. During the colloquy in which the District Court accepted his plea, the court did not inform Gonzales, a lawful permanent resident of the United States, of the serious potential immigration consequences of his plea. These consequences included likely removal from the United States. The plea agreement, too, did not mention those consequences. In its omission at the colloquy, the District Court violated Fed. R. Crim. P. 11(b)(1)(O). Months later, at sentencing, having learned through the Presentence Report that he would likely be

removed after serving his sentence, Gonzales himself addressed the court and complained that he had not known about those consequences when he entered his plea. The District Court acknowledged Gonzales's concern but took no action to remedy the earlier oversight or to inquire further. Because the court's failure to inform Gonzales of the immigration consequences of his plea before accepting his plea violated Gonzales's substantial rights, we VACATE the judgment of the District Court and REMAND the cause for further proceedings consistent with this opinion.

VACATED AND REMANDED.

––––––––––––

BRENDAN WHITE, White & White, New York, NY, *for Defendant-Appellant*.

ROBERT MARANGOLA (Monica Richards, *on the brief*), Assistant United States Attorneys, *for* James P. Kennedy, Jr., Acting United States Attorney for the Western District of New York, Buffalo, NY, *for Appellee*.

––––––––––––

PER CURIAM:

Defendant-Appellant Winifredo Gonzales appeals from a judgment of conviction in the United States District Court for the Western District of New York (Geraci, *C.J.*), arguing that his guilty plea was not knowingly entered. During the colloquy in which the District Court accepted his plea, the court did not inform Gonzales, a lawful permanent resident of the United States, of the serious potential immigration consequences of his plea. These consequences included likely removal from the United States. The plea agreement, too, did not mention those consequences. In its omission at the colloquy, the District Court violated Federal Rule of Criminal Procedure 11(b)(1)(O),

which provides in relevant part that "before the court accepts a plea of guilty . . . the court must address the defendant personally . . . [and] inform the defendant of, and determine that the defendant understands . . . that, if convicted, [and if] not a United States citizen [he] may be removed from the United States, denied citizenship, and denied admission to the United States in the future."

Months later, at sentencing, having learned through the Presentence Report (PSR) that he would likely be removed after serving his sentence, Gonzales himself addressed the court and complained that he had not known about those consequences when he entered his plea. The District Court acknowledged Gonzales's concern but took no action to remedy the earlier oversight or to inquire further. Because the court's failure to inform Gonzales of the immigration consequences of his plea before accepting his plea violated Gonzales's substantial rights, we VACATE the judgment of the District Court and REMAND the cause for further proceedings consistent with this opinion.

## BACKGROUND

On June 22, 2015, Defendant-Appellant Winifredo Gonzales was charged by information in Rochester, New York, with one count of conspiracy to manufacture, possess with intent to distribute, and distribute, five kilograms or more of cocaine and 280 grams or more of cocaine base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and one count of possessing a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A)(i). The following day, he entered into a plea agreement with the government under Fed. R. Crim. P. 11(c)(1)(C) that contemplated primarily a sentence of 228 months and appeared with counsel before the District Court

3

for the Western District of New York to enter his plea of guilty to the charged offenses. In the plea colloquy that day, the District Court failed, in violation of Fed. R. Crim. P. 11(b)(1)(O), to "inform [Gonzales] of, and determine that [he] understands, . . . that, if convicted, [if he] is not a United States citizen[, he] may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O). Gonzales was not informed of the dire potential immigration consequences of his plea by his attorney, the prosecutors, or the plea agreement itself. Gonzales is a lawful permanent resident (LPR), not a citizen, of the United States.

On December 15, 2016, almost eighteen months after the District Court accepted his plea, Gonzales appeared with counsel before the District Court, for sentencing. By that point, he had had access to the PSR, dated June 10, 2016. In its paragraph 86, the PSR recited Gonzales's status as an LPR and advised, "[B]ased on the nature of the offenses to which Gonzales pled guilty to, it appears that he may be amenable to removal after sentencing." PSR ¶ 86. During sentencing, the court asked whether he had a "chance to review the [PSR] with your attorney as well and discuss it with him." Gonzales responded, "Did he? Yes. But I have some disagreement with the presentence report." App. 81. After a brief discussion of an offense-level concern, the defendant further addressed the court as follows: "There's another [concern] . . . . I asked [my counsel] about my—they're saying me getting deported after my sentencing. You said I have to—don't worry about that, I was here since I was five years old. Is that true? He told me I don't have to worry about that." *Id*. at 82-83. After confirming that Gonzales is an LPR, the District Court responded, "Mr. Gonzales is raising whether or not he was

4

advised that the plea in this case would have consequences on his status in the United States, and I don't recall that being part of the plea agreement in here. The sentence here is involving [sic] almost 20 years, that may be why it wasn't part of the agreement. Is there anything else?" *Id.* Gonzales responded, "No, Your Honor." *Id.* That was the end of the discussion of the immigration consequences of Gonzales's plea.

At the close of the sentencing hearing, the District Court asked Gonzales if there was "anything [he] want[ed] to say." Gonzales responded, "No, I got nothing to say. I'm not satisfied with [my counsel's] defense. That's all I got to say." App. 84. The District Court then sentenced Gonzales to a total of 228 months of imprisonment followed by five years of supervised release and ordered that, at the end of his term of incarceration, Gonzales "be delivered to immigration authorities at the appropriate time to determine his status in the United States." Represented by new counsel, Gonzales timely appealed.

## DISCUSSION

On appeal, Gonzales seeks vacatur of the judgment of conviction and his associated plea. He argues that his plea was not knowing and voluntary because he was unaware of the grave potential immigration consequences of the convictions when the plea agreement was reached and the plea was entered.

Entry of a guilty plea must be "a knowing and intelligent act done with 'sufficient awareness of the relevant circumstances and likely consequences.'" *United States v. Rossillo*, 853 F.2d 1062, 1064 (2d Cir. 1988) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). To help ensure that a guilty plea is "a knowing and intelligent act,"

5

Fed. R. Crim. P. 11 governs many aspects of a district court's interaction with a defendant who is entering a guilty plea. *Rossillo*, 853 F.2d at 1065. As noted above, Rule 11 requires in particular that, before accepting a guilty plea, the District Court "inform the defendant of, and determine that the defendant understands," that "if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future." Fed. R. Crim. P. 11(b)(1)(O). Our Court requires "strict adherence" to Rule 11. *United States v. Pattee*, 820 F.3d 496, 503 (2d Cir. 2016). Because of its importance, we must "examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights has been compromised." *Id.*

The government concedes that the plea colloquy engaged in by the District Court here "plain[ly]" violated Rule 11. Appellee's Br. 6. Because Gonzales himself personally raised the error in the District Court, albeit at sentencing (having apparently been alerted to the issue by the PSR), we review the record to determine whether the government has demonstrated that the District Court's failure to inform Gonzales of the potential immigration consequences of his plea is harmless error, as the government contends. *Pattee*, 820 F.3d at 503, 505; *see also United States v. Davila*, 569 U.S. 597, 606-07 (2013). A Rule 11 violation is harmless only if it does not affect the defendant's "substantial rights." Fed. R. Crim. P. 11(h). A "substantial right" is affected if there is "a reasonable probability that, but for the error, [the defendant] would not have entered the plea." *Pattee*, 820 F.3d at 505. When applying harmless error review, "the prosecution bears the burden of showing harmlessness," *Davila*, 569 U.S. at 607, and the

6

government must demonstrate that "the misinformation in all likelihood would not have affected [Gonzales's] decision-making calculus," *United States v. Harrington*, 354 F.3d 178, 184 (2d Cir. 2004).

In presenting his plea, Gonzales came before the court as a lawful permanent resident of the United States, a status he had held for over forty years, having come to this country from the Philippines with his parents in the late 1970s as a child. He has lived in New York City, near his two children and their mothers, for most of his life. His grandmother and his father (his only living parent) live in the New York City area, and his siblings are residents serving in the military of the United States. Here, the government points to no evidence contradicting Gonzales's assertion at his sentencing that, when entering his plea, he did not understand that he would likely be deported for his offense. It has given no persuasive reason to conclude that the likely grave immigration consequences of his plea were not of great importance to Gonzales, *see Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) (deportation is "a particularly severe penalty"); *see also Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (finding "deportation was the determinative issue in [defendant's] decision whether to accept the plea deal"). The crimes with which Gonzales was charged are serious, and it appears that he may have derived a benefit from entering into the plea agreement at issue, but that alone is not enough for us to conclude, as the government would have us do, that the prospect of removal was not an important and even essential factor for Gonzales to consider in determining his course of action.

It is true that Gonzales did not formally move to withdraw his plea immediately after learning from the PSR that he "may be amenable" to removal. PSR ¶ 86. But

7

Gonzales's actions at sentencing spoke loudly, and both the District Court and counsel then present inexplicably failed to take up the burden, rightly theirs, to raise with him his wishes regarding his earlier-entered plea.  As we have previously noted, "compliance with Rule 11 is not a difficult task," and district courts can easily use "a standard script for accepting guilty pleas, which covers all of the required information" to ensure their conformity with the Rule. *Pattee*, 820 F.3d at 503.[1] Moreover, while the mandates of Rule 11 are addressed primarily to the District Court, and the obligation should be meticulously carried out, "[p]rosecutors and defense attorneys also have an obligation to make sure that the Rule is followed." *Id.* at 504.

The Supreme Court has recognized that "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Padilla*, 559 U.S. at 364 (footnote omitted); *see also I.N.S. v. St. Cyr*, 533 U.S. 289, 322 (2001) ("There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions."). It is a district court's responsibility, ultimately, to ensure that no defendant, when entering a guilty plea, is blindsided by this aspect of his penalty. The District Court did not do so here.

---

[1] By detailing the court's obligations before accepting a guilty plea, Rule 11 safeguards vital rights of criminal defendants at a crucial moment. *Pattee*, 820 F.3d at 504.  And yet, as we have noted with concern elsewhere, failures to comply with Rule 11 have been a "recurring issue" within this Circuit. *Id.* at 503. Such failures are unacceptable. We see no legitimate excuse for noncompliance with Rule 11 absent special circumstances.

On this record, we therefore conclude that the District Court's failure to inform Gonzales of the immigration consequences of his plea, in violation of Rule 11, affected Gonzales's substantial rights and was not harmless. Even were we to consider Gonzales's appeal under plain error review, the total silence on this issue at the plea colloquy and Gonzales's questions and comments at sentencing leave us with little doubt that the serious immigration consequences of his plea, had they been timely raised, would have been a critical factor in Gonzales's decision to enter a plea agreement. *See Lee*, 137 S. Ct. at 1966 (rejecting, in context of habeas claim for ineffective assistance of counsel, government's argument that defendant "cannot show prejudice from accepting a plea where his only hope at trial was that something unexpected and unpredictable might occur that would lead to an acquittal"). Gonzales was entitled to be aware of these consequences in deciding whether and how to plead to the charges brought against him. The District Court was obligated to ensure that he was, before accepting his plea, and its failure to do so in this case requires vacatur of the judgment of conviction.

## CONCLUSION

For these reasons, the judgment of the district court entered pursuant to Gonzales's plea agreement is **VACATED** and the cause is **REMANDED** for further proceedings consistent with this opinion.