United States v. Damon Montgomery, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York on the 20th day of May, two thousand twenty one.

Present:     JON O. NEWMAN,
             GUIDO CALABRESI,
             ROSEMARY S. POOLER,
                   *Circuit Judges*.

---

UNITED STATES OF AMERICA,

                     *Appellee*,

             v.                                            18-535-cr

DAMON MONTGOMERY, AKA DANG,

                     *Defendant-Appellant*,[1]

---

Appearing for Appellant:     Sarah Kunstler, Brooklyn, N.Y.

Appearing for Appellee:      Katherine A. Gregory, Assistant United States Attorney, *for* James P. Kennedy, Jr., United States Attorney for the Western District of New York, Buffalo, N.Y.

---

[1] The Clerk of Court is directed to amend the caption as above.

Appeal from the United States District Court for the Western District of New York (Geraci, *C.J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of said District Court be and it hereby is **AFFIRMED**.

Damon Montgomery appeals from the February 16, 2018 judgment of conviction of the United States District Court for the Western District of New York (Geraci, *C.J.*) following his plea of guilty to a one-count superseding information charging him with conspiracy to possess with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 846. Montgomery received a sentence consisting principally of 216 months' imprisonment pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). We assume the parties' familiarity with the underlying facts, procedural history, and specification of issues for review.

Montgomery primarily argues on appeal that the district court failed to comply with several required aspects of Rule 11 in his plea colloquy, and therefore, his plea was unknowing and involuntary.

Rule 11 is "designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." *United States v. Maher*, 108 F.3d 1513, 1520 (2d Cir. 1997). Where, as here, a defendant has failed to object in the district court to a violation of Rule 11, reversal is appropriate only where the error is plain and affects the defendant's substantial rights. *United States v. Vonn*, 535 U.S. 55, 58–59 (2002). To establish plain error, a defendant must show: (1) that there was error, (2) that the error was plain, and (3) the error prejudicially affected his substantial rights. *See United States v. Dominguez Benitez*, 542 U.S. 74, 80-83 (2004).

In conducting plain error review, we examine the entire record to determine whether the defendant demonstrated a reasonable probability that, but for the error, he would not have entered the plea. *See United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006). As part of this examination, we consider "any record evidence tending to show that a misunderstanding was inconsequential to a defendant's decision to plead guilty, as well as the overall strength of the Government's case." *Id.* (internal quotation marks omitted). "[A] district court's failure to follow the basic requirements of Rule 11 requires that this Court examine critically even slight procedural deficiencies to ensure that the defendant's guilty plea was a voluntary and intelligent choice, and that none of the defendant's substantial rights has been compromised." *United States v. Pattee*, 820 F.3d 496, 503 (2d Cir. 2016) (internal quotation marks omitted).

The plea colloquy failed to comply with Rule 11 in several respects. While making clear that Montgomery was not induced by threats or coercion, the district court failed to confirm that no promises had been made other than those in the written agreement. The government also concedes that the district court failed to inform Montgomery of his right to call witnesses. Although neither party addresses it, the district court also failed to inform Montgomery that he could testify and present evidence. The parties dispute whether the district court's explanation of its independent obligation to calculate the sentencing guidelines was satisfied by the court's

statement it had to "consider the guidelines, but [was] not bound by those." App'x 417. Montgomery is correct that this statement does not suggest that the district court was required to calculate the guidelines independently of the plea agreement. Finally, the district court failed to incorporate warnings regarding the immigration consequences of a guilty plea.

While these errors speak to a concerning carelessness, it is difficult to see any as indicating that Montgomery's plea was unknowing or involuntary. After the government filed an enhanced penalty information describing Montgomery's two prior felony drug convictions, he was exposed to a potential mandatory life sentence. By pleading, Montgomery received a substantial benefit—the removal of this mandatory sentence and a likely sentence of 216 months.

Further, as the government notes, Montgomery provides no indication that there were any witnesses that he intended to compel to testify. He points to no indications of extra-record promises that might have compromised the plea proceedings, and he acknowledged that he was proceeding with full awareness of the plea agreement's terms. The district court's failure to address its independent obligation to calculate the guidelines is also unlikely to have affected Montgomery's decision to plead because Montgomery pled guilty pursuant to Rule 11(c)(1)(C) and the district court's exercise of discretion would have vitiated the plea. Montgomery received the agreed sentence, even after the district court accepted a higher guidelines calculation, as calculated by the probation department in his pre-sentencing report, at his sentencing hearing. Finally, Montgomery is a U.S. born citizen. The omission of the immigration consequences cannot have played a role in the decision to plead guilty.

Ultimately, this case resembles *Pattee*, where we observed that the district court omitted "five of the approximately fifteen rights of which a court is required to advise a defendant." 820 F.3d at 502. Despite these errors, we noted that the record as whole clearly revealed that the defendant understood the charges against him, the harsh penalties to which he was exposed, the strength of the evidence against him, and the essential bargain of the plea. *Id.* at 505-07. As in that case, we can say here "[t]hat the district court omitted several of the required items of the colloquy is regrettable, but we have no basis for concluding that [the] decision to plead guilty was the result of these omissions." *Id*. at 507.

Montgomery's remaining objections are the result of an overly technical reading of the district court's questions. Montgomery suggests that Montgomery was not informed of his right to a jury trial because the district court asked him if he was aware that by pleading, he was surrendering "[his] right to have a trial by jury or judge." App'x 409. This argument is difficult to accept. The district court clearly invoked Montgomery's right to trial by jury. *See Torrellas*, 455 F.3d at 102 ("[W]hile Rule 11 imposes strict requirements on what information the district courts must convey and determine before they accept a plea, it does not tell them precisely *how* to perform this important task in the great variety of cases that come before them.") (internal quotation marks and ellipses omitted).  Montgomery raises a similar objection to the district court's discussion of his right to remain silent. The district court asked Montgomery if he understood that "if the matter did go to trial, the Court would advise the jury that you have a presumption of innocence, the burden of proof rests on the Government, and you could not be compelled to testify or present any evidence at trial." App'x 409-10. Again, this objection goes

3

to the form of the question; the district court conveyed to Montgomery that he would waive his right against self-incrimination by pleading.

Montgomery also argues that the district court failed to inform him of his right to counsel at trial. The district court's phrasing of this right was more troubling than the jury and self-incrimination questions. The district court asked if he understood that he had "a right to an attorney throughout these proceedings right through the time of sentencing." App'x 408-09. Montgomery argues that this question suggested he might only have this right from plea to sentencing, and he would lose his right to counsel if he proceeded to trial. However, an examination of the record suggests that it is unlikely that he understood the question in this way. Montgomery's attorney had already engaged in substantial work in preparation for trial, which was to commence in two weeks. The district court discussed the trial schedule with counsel in open court. As in *Pattee*, "[i]n the context of the entire record, . . . the contention that [Montgomery] was not aware of his right to counsel is unpersuasive." 820 F.3d at 506.

Finally, Montgomery argues that the plea lacked a sufficient factual basis. At the hearing, Montgomery objected to the statement that he personally obtained heroin from Jerome Randolph. He argues this shows that the plea failed to demonstrate he understood and accepted the charges against him. While Montgomery objected to this language in the plea, a review of the transcript makes clear that he was objecting to the phrasing of how drugs were supplied and not his involvement in the narcotics trafficking conspiracy. He objected to the statement that he "personally" received heroin from Jerome Randolph, which his attorney explained meant that he did not receive the drugs directly from Randolph. App'x 414. The district court proceeded to ask clarifying questions that laid out how the conspiracy worked, with drugs flowing from Philadelphia to Rochester, and Montgomery conducting street level sales. Montgomery would send the proceeds to Philadelphia for additional drugs. Nothing about the detailed questions from the district court suggests that any element of the crime was missing. Montgomery explicitly agreed that he exchanged money for narcotics as part of heroin trafficking between Rochester and Philadelphia. In *Torrellas*, we held that yes and no answers to questions from the district court suffice to establish a factual basis for a plea. 455 F.3d at 103-04. Montgomery clearly demonstrated that he understood the factual basis for the charges and accepted his role in the charged conspiracy.

All this said, we are troubled by the significant deviations from Rule 11's requirements. Beyond hoping that district courts will be more attentive in the future, we wish to note that the U.S. attorneys, as officers of the court, have an independent duty to make the court aware of possible failures to comply with Rule 11.

We have considered the remainder of Montgomery's arguments and find them to be without merit. Accordingly, the judgment of the district court hereby is AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

4