**UNITED STATES of America, Appellant,**

v.

**Rafique ASLAM, Defendant–Appellee.**

**No. 1004, Docket 90–1552.**

United States Court of Appeals, Second Circuit.

Argued March 12, 1991.

Decided June 27, 1991.

William C. Pericak, Asst. U.S. Atty. (Frederick J. Scullin, Jr., U.S. Atty., Albany, N.Y., on the brief), for appellant.

Meave M. Tooher, Albany, N.Y., for defendant-appellee.

Before FEINBERG, TIMBERS, and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal by the Government from a District Court's reversal of a judgment of conviction entered by a Magistrate Judge raises an issue of appellate jurisdiction in criminal cases and a substantive issue concerning the scope of 8 U.S.C. § 1324(a)(2) (1988), which proscribes bringing illegal aliens to the United States. The issues arise on an appeal by the United States from a judgment of the District Court for the Northern District of New York (Con. G. Cholakis, Judge) 743 F.Supp. 119, acquitting Rafique Aslam of violating section 1324(a)(2), after Aslam had been found guilty by Magistrate Judge Ralph W. Smith, Jr. Judge Cholakis ruled that section 1324(a)(2) does not apply to a defendant who endeavors to meet an illegal alien on the United States side of a national border and assist his illegal entry. We conclude that we have jurisdiction over the appeal and that section 1324(a)(2) applies to

the defendant's conduct. We therefore reverse and remand to the District Court for consideration of the remaining issues raised on Aslam's appeal from the judgment of conviction entered by the Magistrate Judge.

## Facts

Aslam is a Pakistani citizen, currently residing in the United States as an applicant for amnesty. He was arrested, along with two illegal aliens from Pakistan, in a deserted area known as "the Knuckle," a few yards south of the Canadian border, near the village of Rouses Point, New York. Agents of the United States Border Patrol, aware that Pakistani aliens had been smuggled into the United States at this location, installed a sensor device. Responding to an alert from the device during a snowstorm on the night of January 16, 1990, the agents observed Aslam in his car making a U-turn at the Knuckle and at the same time saw two men walking south along the road. The two men turned out to be illegal aliens from Pakistan who had walked across the Canadian border. The agents observed footprints in the snow indicating that a guide had accompanied the aliens across the border and had then returned to the Canadian side and driven away.

The Government charged Aslam with the misdemeanor of violating 8 U.S.C. § 1324(a)(2) (1988), which punishes

[a]ny person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings to or attempts to bring to the United States in any manner whatsoever, such alien....

By consent, the case was tried before Magistrate Judge Smith without a jury. *See* 18 U.S.C. § 3401(b) (1988). He found Aslam guilty, accepting the Government's theory that Aslam had driven to the remote area by prearrangement in order to meet the two illegal aliens and complete their entry into the United States. The Magistrate Judge declined to credit Aslam's story that he was just driving in the snow looking for a pizza. He sentenced Aslam to time served (ten days), a $2,000 fine, and a $25 assessment.

Aslam appealed to the District Court, pursuant to 18 U.S.C. § 3402 (1988). Judge Cholakis ruled that, though the evidence probably would have supported conviction under the felony provision of 8 U.S.C. § 1324(a)(1)(B) (1988), which punishes anyone who "transports" or "attempts to transport" illegal aliens within the United States knowing of their illegal entry, the evidence did not suffice for conviction under section 1324(a)(2). In his view, Aslam was not a person who "brings to or attempts to bring to the United States," 8 U.S.C. § 1324(a)(2), an illegal alien because his conduct did not "assist[ ] in the physical ingress [of the aliens] into the United States." District Court opinion at 9. Judge Cholakis directed entry of a judgment of acquittal. The Government appealed that ruling to this Court.

## Discussion

■ 1. *Appellate jurisdiction.* This Court has not previously ruled as to our jurisdiction to entertain an appeal by the Government from an adverse decision of a district court reversing a judgment of conviction entered by a magistrate judge. Appellee contends that the Government's appeal is precluded by Rule 3.1 of the Federal Rules of Appellate Procedure, either of its own force or as a persuasive analogy from civil appellate practice. Rule 3.1 provides that outcomes in civil cases, tried by consent before a magistrate judge pursuant to 28 U.S.C. § 636(c)(1) (1988), shall be appealed to a court of appeals unless the parties consent to an appeal to a district court, in which event further appeal may be taken to the court of appeals only upon petition for leave to appeal. *See* 28 U.S.C. § 636(c)(4), (5). The discretionary appeal to a court of appeals contemplated by Rule 3.1 and section 636(c)(5) applies only to civil cases. The applicable provisions do not state or imply that they have any relevance to criminal cases.

However, the inapplicability of civil appeal provisions does not mean that an ap-

peal from the district court to a court of appeals is necessarily available in criminal cases tried before a magistrate judge. Appeal from the magistrate judge to the district court is expressly provided by 18 U.S.C. § 3402. As authority for a further appeal to the court of appeals, the Government relies on 28 U.S.C. § 1291 (1988) and 18 U.S.C. § 3731 (1988). Section 1291 suffices to enable a court of appeals to entertain an appeal from "all final decisions of the district courts," a phrase broad enough to include district court decisions finally adjudicating appeals from misdemeanor trials conducted by a magistrate judge. *See United States v. Forcellati,* 610 F.2d 25, 28 (1st Cir.1979), *cert. denied,* 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980). However, it is well settled that "the United States cannot appeal in a criminal case without express congressional authorization," *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568, 97 S.Ct. 1349, 1352, 51 L.Ed.2d 642 (1977); so the issue becomes whether the requisite authority for a Government appeal is provided by section 3731, the provision according the Government appellate rights in criminal cases.

■ Section 3731 in terms authorizes an appeal to a court of appeals from a decision of a district court "dismissing an indictment or information." There are three arguable objections to the Government's reliance on section 3731. First, there was neither an indictment nor an information, the prosecution proceeding to trial on the complaint that initiated the action. Rule 7 of the Criminal Rules provides that all offenses, other than felonies, may be prosecuted by indictment or information. However, Rule 58, applicable to misdemeanors tried before a magistrate judge, authorizes trial on a complaint. We think it clear that section 3731 applies to rulings made with respect to the charging document, and includes complaints in cases, like the present one, that may be prosecuted on a complaint.

Second, the ruling of the District Court was not precisely a dismissal of the complaint, but a direction for entry of a judg-

ment of acquittal. However, the Supreme Court has ruled that section 3731 applies to rulings that direct an acquittal as well as a dismissal, to the extent permitted by the Double Jeopardy Clause. *See Martin Linen Supply Co.,* 430 U.S. at 567 n. 4, 97 S.Ct. at 1352 n. 4.

■ Third, and more fundamentally, neither section 3731 nor Rule 58 of the Criminal Rules expressly authorizes a second tier of appeal after an initial appeal from a magistrate judge to a district court. However, the Supreme Court has ruled that in enacting section 3731 "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975). Thus, despite its rather detailed wording, section 3731 becomes, not a specification of circumstances in which the Government may appeal in criminal cases, but a broad authorization to appeal unless prohibited by the Double Jeopardy Clause. There is no doubt that this Clause is not violated by an appeal that results in reinstatement of a guilty verdict. *See Martin Linen Supply Co.,* 430 U.S. at 570, 97 S.Ct. at 1354; *Wilson,* 420 U.S. at 352–53, 95 S.Ct. at 1026.

For these reasons, we agree with the other circuits that have upheld the Government's right to appeal a district court's reversal of a conviction entered in a trial before a magistrate judge. *See Forcellati,* 610 F.2d at 27–30; *United States v. Moore,* 586 F.2d 1029, 1031–32 (4th Cir.1978); *United States v. Beck,* 483 F.2d 203, 204–07 (3d Cir.1973), *cert. denied,* 414 U.S. 1132, 94 S.Ct. 873, 38 L.Ed.2d 757 (1974).

■ 2. *Application of section 1324(a)(2).* Prior to 1986, section 1324 punished as a felony various offenses concerning illegal aliens, including "bring[ing] into ... the United States" an illegal alien and "transport[ing] ... within the United States" a person known to be an illegal alien. 8 U.S.C. § 1324(a)(1), (2) (1982). In 1986 Congress revised section 1324 to create both felony and misdemeanor offenses. Pub.L. 99–603, § 112, 100 Stat. 3381 (1986). The "bringing in" felony was refined to apply only to the act of bringing a person

known to be an alien to the United States "at a place other than a designated port of entry or place other than as designated by the Commissioner [of Immigration and Naturalization], regardless of whether such alien has received prior official authorization to ... enter ... the United States...." 8 U.S.C. § 1324(a)(1)(A) (1988). The "transporting" felony was somewhat broadened to apply to the act of transporting an alien within the United States "knowing or in reckless disregard of the fact" that the alien has entered the United States illegally. *Id.* § 1324(a)(1)(B). In addition, the 1986 amendment created a "bringing in" misdemeanor applicable to the act of bringing an alien to the United States, regardless of location, "knowing or in reckless disregard of the fact" that the alien has entered the United States illegally. *Id.* § 1324(a)(2). Both the felony and misdemeanor "bringing in" offenses apply to attempts, and both include the broadening phrase "in any manner whatsoever." *Id.* § 1324(a)(1)(A), (a)(2).

The District Judge ruled that Aslam's conduct in meeting the aliens on the United States side of the Canadian border and being available to drive them to some interior point would be punishable as an attempt to violate the "transporting" felony, but could not be punished as a "bringing in" misdemeanor. What was lacking, the District Judge ruled, was action by Aslam that assisted "the physical ingress" of the aliens into the United States.

■ Though mindful of the rule of lenity requiring that ambiguities in criminal statutes be resolved in favor of a defendant, *see Rewis v. United States,* 401 U.S. 808, 812, 91 S.Ct. 1056, 1059, 28 L.Ed.2d 493 (1971), we think Aslam's conduct violated the "bringing in" misdemeanor, as the Magistrate Judge found, and that we need not read the statute so narrowly as to require his conduct to be prosecuted under the "transporting" felony. We agree with the Government that section 1324(a)(2) punishes those who participate in the process of bringing illegal aliens into the United States, and that the offense does not end at the instant the alien sets foot across the border. The illegal importation of aliens, like the illegal importation of drugs, *see*

*United States v. Leal,* 831 F.2d 7, 9 (1st Cir.1987); *United States v. MacDougall,* 790 F.2d 1135, 1150–51, 1153 (4th Cir.1986), continues at least until the alien reaches his immediate destination in this country. *See United States v. Merkt,* 794 F.2d 950, 953 (5th Cir.1986) (applying former section 1324(a)(1) to defendant who met aliens on United States side of Mexican border and brought them to a sanctuary), *cert. denied,* 480 U.S. 946, 107 S.Ct. 1603, 94 L.Ed.2d 789 (1987).

The District Judge appears to have ruled out the possibility that the "bringing in" misdemeanor and the "transporting" felony might overlap to some extent. Though every act violating the "transporting" felony might not also violate the "bringing in" misdemeanor, we see no reason to insist that there is no overlap at all. Without determining either the geographic or the temporal scope of the "bringing in" misdemeanor, we agree with the Magistrate Judge that it was properly applied to Aslam's conduct in meeting two aliens within a few yards of a border shortly after they had walked across it.

The judgment of the District Court is reversed, and the case is remanded for consideration of the remaining grounds of the defendant's appeal from the decision of the Magistrate Judge.