18-0616
USA v. Mladen

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

- - - - - -

August Term, 2019

(Appeal Argued:  October 21, 2019
 Motion Submitted:  February 25, 2020                    Decided:  May 6, 2020)

Docket No. 18-0616

_____

UNITED STATES OF AMERICA,

                                                      *Appellee*,

                                    - v. -

DUSAN MLADEN, aka David Mladen,

                                                      *Defendant-Appellant*.
_____

Before:  KEARSE, WALKER, and LIVINGSTON, *Circuit Judges*.

Defendant Dusan Mladen filed this appeal from a judgment entered in the United States District Court for the District of Connecticut after his plea of guilty before Jeffrey A. Meyer, *Judge*, convicting him on one count of making false statements to a federal official, in violation of 18 U.S.C. § 1001, and sentencing him to

five years' imprisonment, three years of supervised release, a $20,000 fine, and the mandatory $100 special assessment, *see id.* § 3013(a)(2)(A). Mladen appealed, arguing only that there were substantive and procedural errors in connection with sentencing and that his sentence was unreasonable. The appeal was argued in October 2019 and has remained pending. On February 10, 2020, Mladen's counsel notified this Court that on February 8, 2020, Mladen died. On this basis, counsel has moved for abatement of all incidents of the prosecution, requesting that the appeal be dismissed without a decision on the merits, that Mladen's judgment of conviction be vacated, and that the matter be remanded to the district court with instructions to dismiss the indictment and order repayment to Mladen's estate of the $20,000 fine and $100 special assessment. The government opposes so much of the motion as seeks abatement of Mladen's conviction and the $100 special assessment. Because Mladen was convicted upon his plea of guilty, and he neither did nor was permitted to challenge on appeal the merits of his conviction, we deny as without merit so much of the motion as seeks (1) vacatur of Mladen's conviction, (2) dismissal of the count of the indictment on which he was convicted, and (3) repayment of the mandatory $100 special assessment; we grant so much of the motion as requests dismissal of this appeal and a remand to the district court for vacatur of the imposed terms of

2

imprisonment and supervised release and for an order requiring that the paid fine of $20,000 be repaid to Mladen's estate.

The motion is granted in part and denied in part; the appeal is dismissed.

MARC H. SILVERMAN, Assistant United States Attorney, New Haven, Connecticut (John H. Durham, United States Attorney for the District of Connecticut, William J. Nardini, Assistant United States Attorney, New Haven, Connecticut, on the brief), *for Appellee*.

ROBERT A. CULP, Garrison, New York, *for Defendant-Appellant*.

KEARSE, *Circuit Judge*:

Defendant Dusan Mladen filed this appeal from a judgment of the United States District Court for the District of Connecticut entered after his plea of guilty before Jeffrey A. Meyer, *Judge*, convicting him on one count of making false statements to a federal official, in violation of 18 U.S.C. § 1001, and sentencing him to 60 months' imprisonment, a three-year term of supervised release, a fine of $20,000, and the mandatory $100 special assessment, *see id*. § 3013(a)(2)(A). Mladen appealed, arguing only that there were substantive and procedural errors in connection with sentencing and that his sentence was unreasonable. The appeal was argued in October 2019 and has remained pending. On February 10, 2020, Mladen's counsel

notified this Court that on February 8, 2020, Mladen died. On this basis, counsel has moved for abatement of all proceedings against Mladen ("Abatement Motion" or "Motion"), requesting that the appeal be dismissed without a decision on the merits, that Mladen's judgment of conviction be vacated, and that the matter be remanded to the district court with instructions to dismiss the indictment, order repayment of the fine and special assessment paid by Mladen, and abate all other incidents of the prosecution. The government opposes so much of the Motion as seeks abatement of Mladen's conviction and the mandatory $100 special assessment. Because Mladen was convicted upon his plea of guilty, and he neither did nor was permitted to challenge on appeal the merits of his conviction, we deny as without merit so much of the Abatement Motion as seeks (1) vacatur of Mladen's conviction, (2) dismissal of the count of the indictment on which he was convicted, and (3) repayment of the $100 special assessment mandated for an individual upon his conviction of a felony. We deny as moot so much of the Motion as requests dismissal of the remainder of the indictment, which has already been dismissed. We grant so much of the Motion as seeks vacatur of the imposed terms of imprisonment and supervised release, return of the $20,000 paid fine, and dismissal of the appeal.

## I. BACKGROUND

In a two-count indictment filed in July 2017, Mladen was charged with threatening to assault a federal judge ("the Judge") before whom he was a litigant, in violation of 18 U.S.C. § 115(a)(1)(B) ("Count One"), and making false statements in a matter within the jurisdiction of a department or agency of the United States, in violation of 18 U.S.C. § 1001, by falsely claiming, *inter alia*, that he had not telephoned the Judge, had not gone to the Judge's house, and had not threatened the Judge ("Count Two"). On October 13, 2017, Mladen and the government entered into a written plea agreement ("Plea Agreement" or "Agreement"), and Mladen pleaded guilty to Count Two of the indictment.

### A. *Mladen's Count-Two Admissions in the Plea Agreement*

As part of the Plea Agreement, Mladen acknowledged that until late July 2017 he was a litigant in a matter pending before the Judge, and he stipulated to the following Count-Two offense conduct, *inter alia*: (a) in early July, Mladen placed an unsigned, handwritten note in the mailbox at the Judge's home, telling the Judge to "BACK OF[F]," and stating "JUST WARNING FOR NOW" (Plea Agreement at 10, ¶ 3

5

(internal quotation marks omitted)); (b) on July 10, from his home, Mladen placed a call to the Judge's home telephone number, which was automatically forwarded to the Judge's personal cell phone and was answered by the Judge; (c) in that call, Mladen refused to identify himself but said, *inter alia*, that he "had visited the Judge's house the previous week" (*id*. ¶ 4), and "I left a message for you" (*id*. (internal quotation marks omitted)).

Mladen stipulated that on July 11 he was interviewed by United States Deputy Marshals and that in that interview he, *inter alia*, (a) denied having telephoned the Judge, (b) denied even knowing the Judge's telephone number, and (c) denied having gone to the Judge's house. In the Plea Agreement, Mladen admitted that each of these denials was false, that "[e]ach of these statements was material," and that he willfully made these statements, knowing that they were false. (*Id*. ¶¶ 5, 8.)

B. *Additional Information and Sentencing*

The Plea Agreement stated that "[t]he Government contends that the defendant also committed the conduct outlined in Count One of the indictment, and that the Court should consider such conduct as relevant conduct under the [Sentencing] Guidelines." (Plea Agreement at 4.) It stated that "[a]fter sentencing, the

Government will move to dismiss Count One of the indictment because the conduct underlying the dismissed counts [*sic*] will have been taken into account in determining the appropriate sentence." (*Id*. at 8.)

The Agreement also stated that "defendant and the Government reserve their right[s] to present additional offense conduct and relevant conduct to the Court in connection with sentencing" (*id*. at 11). Mladen acknowledged his understanding both that the Count Two offense-conduct stipulation in the Agreement did "not set forth all of the relevant conduct and characteristics that may be considered by the Court for purposes of sentencing" (*id*. at 3-4), and that the government was "obligated to advise the Court of any additional relevant facts that subsequently come to [its] attention" (*id*. at 4).

On the day before Mladen entered his plea, the United States Marshals Service ("Marshals") received a letter from an inmate at the New Haven Correctional Center (the "informant") stating that he was housed with Mladen. The letter stated that Mladen had made statements about a federal judge and about the possibility of threatening that judge physically.

A new investigation was opened, staffed by Marshals and attorneys other than, and administratively screened from, those assigned to Mladen's existing

7

prosecution. After interviewing the informant and hearing that Mladen had sought his help in finding someone to frighten the Judge, the Marshals obtained authorization to secretly record conversations between Mladen and the informant. Thereafter, in a November 8, 2017 recorded conversation between the two, Mladen stated, *inter alia*, that he planned, post-release, to try to find evidence of wrongdoing by the Judge, and said that if he could not find such evidence he would fabricate something. He also stated that he had previously actually armed himself with a gun, and had been ready to drive to the Judge's house, planning to wait nearby for an opportunity to "[s]hoot" and "[k]ill" the Judge.

The government provided the full audio recording and a complete transcript of Mladen's November 8 conversation with the informant to the defense, and provided a redacted version of the transcript to the Probation Office preparing the presentence report ("PSR") on Mladen. Passages of the transcript were reproduced in an addendum to the PSR. Mladen sought a hearing at which the informant would be called to testify. The district court denied the request because Mladen did not dispute that he made the statements attributed to him in the transcript.

In sentencing Mladen on Count Two of the indictment in February 2018, the court considered, *inter alia*, the statements made by Mladen in the note he left in the Judge's mailbox, the statements he made in his telephone conversation with the Judge, and the statements he made in his jailhouse conversation with the informant. The court concluded, in connection with Mladen's false statements as charged in Count Two and admitted in the Plea Agreement, that his relevant conduct included statements to the Judge that constituted threats, and that Mladen intended his statements as threats. The court calculated that the Guidelines-recommended range of imprisonment was 51-to-63 months, but was capped at 60 months, the statutory maximum, *see* 18 U.S.C. § 1001. The court sentenced Mladen to serve 60 months' imprisonment, to be followed by a three-year term of supervised release, and imposed a fine of $20,000, and the mandatory special assessment of $100. On motion of the government, Count One was dismissed.

C. *Mladen's Contentions on Appeal*

Mladen appealed, raising only challenges to his sentence and the sentencing proceedings. He contended that the denial of his request for a hearing at which the informant would testify denied him due process; and he argued, for the

9

first time, that his conversations with the informant, and any consideration of those conversations, violated his Sixth Amendment right to counsel. He also contended that the district court erred in calculating his Guidelines-recommended range of imprisonment, in imposing supervised release conditions that he argued were unreasonable, and in ordering him to pay a $20,000 fine without sufficient evidence that he had the financial ability to pay such an amount.

D. *The Present Motion*

Before the appeal could be decided, Mladen died. His attorney filed the Abatement Motion--without needing to substitute Mladen's estate for this purpose, *see United States v. Brooks*, 872 F.3d 78, 82 & n.2 (2d Cir. 2017) ("*Brooks*")--to erase all proceedings against Mladen, requesting vacatur of his conviction, dismissal of the appeal, dismissal of the indictment, and repayment to Mladen's estate of the paid fine and special assessment. The government opposes so much of the Motion as seeks vacatur of the conviction and return of the special assessment. For the reasons that follow, we grant the Motion in part and deny it in part.

## II.  DISCUSSION

A.  *Abatement Principles*

In the federal judicial system, a defendant convicted of a crime--unless he has entered an unconditional plea of guilty (*see* Part II.B. below)--has the right to challenge the judgment of conviction in a direct appeal, *see* 28 U.S.C. § 1291; Fed. R. Crim. P. 32(j); Fed. R. App. P. 4(b)(1)(A).  Under the doctrine of "abatement," if the defendant dies while his direct appeal as of right is pending, his death "[o]rdinarily" requires not only the dismissal of the appeal but also the eradication of "all proceedings had in the prosecution from its inception."  *United States v. Wright*, 160 F.3d 905, 908 (2d Cir. 1998) ("*Wright*") (internal quotation marks omitted); *see, e.g., Brooks*, 872 F.3d at 87; *United States v. Libous*, 858 F.3d 64, 66 (2d Cir. 2017) ("*Libous*").  This doctrine

> is principally animated by two considerations.  "*First, the interests of justice ordinarily require that a defendant not stand convicted without resolution of the merits of an appeal*." *Wright*, 160 F.3d at 908 (internal quotation marks and alterations omitted).  "*Second, to the extent that the judgment of conviction orders incarceration or other sanctions that are designed to punish the defendant, that purpose can no longer be served*." *Id*.

*Libous*, 858 F.3d at 66 (emphases ours).  Of these two considerations, we have "conclude[d] that finality is the paramount consideration," *Brooks*, 872 F.3d at 88; *see*,

11

*e.g.*, *Libous*, 858 F.3d at 66-67, reflecting "procedural due process concerns" that the government "should not label one as guilty until he has exhausted his opportunity to appeal," *id*. at 66 (internal quotation marks omitted).

In a complete abatement *ab initio* "'everything associated with the case is extinguished, leaving the defendant as if he had never been indicted or convicted.'" *Brooks*, 872 F.3d at 87 (quoting *Libous*, 858 F.3d at 66). Nonetheless, "the application of the doctrine of abatement is not indivisible . . . ." *Brooks*, 872 F.3d at 87. For example,

> many *defendants* . . . are charged with multiple counts and *may be convicted by a jury on some counts and by a plea of guilty on others*. Those convictions may become final at different times, and a defendant may choose not to appeal every conviction. *The doctrine of abatement leaves the deceased defendant as if he had never been indicted or convicted . . . only as to those counts as to which the conviction has not yet become final*.

*Id*. (internal quotation marks omitted) (emphases ours).

In *Brooks*, the defendant had been charged with three tax offenses and numerous other counts of securities fraud, mail and wire fraud, and obstruction of justice. As to the tax counts, Brooks pleaded guilty, agreed to pay restitution to the Internal Revenue Service, waived the right to appeal those convictions, and waived the right to appeal the prison term to be imposed unless it exceeded certain levels.

12

*See id*. at 81, 85, 91. On the non-tax counts, Brooks was convicted after a jury trial; he was sentenced principally to 204 months' imprisonment, and was ordered to pay restitution and a fine and to forfeit assets. *See id*. at 85. He appealed his convictions on the non-tax counts, but not those on the tax counts. *See id*. at 82.

While his appeal was pending, Brooks died. His estate moved for abatement of all of his convictions, the imposed fines, and the orders of forfeiture and restitution, as well as the special assessments statutorily mandated for the counts of conviction. *See id*. We granted the motion in part, abating Brooks's convictions on the non-tax counts, as well as all facets of his sentence on those counts; but we denied abatement with respect to the tax counts:

> Brooks's convictions on the counts that were decided by the jury and the associated forfeiture order, fine, and special assessment are abated upon his death. *As Brooks pled guilty to the tax evasion counts, waived his right to appeal as to those counts, and did not appeal them, his convictions on those counts do not abate*. The case shall be remanded to the district court for dismissal of the indictment on the non-tax counts and those related sanctions.

*Id*. at 88 (emphasis added); *see also id*. at 96 ("The death of David Brooks abates all of his *convictions that were pending appeal at the time of his death and any corresponding restitution*. His death does not abate the other convictions . . . ." (emphasis added)); *id*. at 91 ("*Because the[ non-tax] counts of conviction were resolved by a guilty plea and he*

*did not appeal them, those convictions became final prior to Brooks's death*." (emphasis added)).

The government argues that the reasoning of *Brooks* requires rejection of the request for vacatur of Mladen's conviction and repayment of the special assessment because Mladen pleaded guilty, expressly waived his right to appeal his conviction, and challenged only his sentence, not the conviction itself, in his arguments on appeal. The Mladen Motion, however, contends that *Brooks*'s abatement-divisibility analysis is inapposite because *Brooks* dealt with entire counts that had become final and were not appealed, whereas Mladen was convicted on only one count and appealed his sentence on that count. The Motion argues that the present case is governed by our decision in *Wright*, in which we vacated the defendant's conviction in its entirety; it states that "the [*Wright* deceased] defendant . . . was only challenging his sentence on appeal" (Affirmation of Robert A. Culp in support of Mladen Abatement Motion ¶ 8). We find the Motion's reading of *Wright* unduly expansive, and its reliance misplaced.

While Mr. Wright did not challenge the merits of his conviction, the matter of whether his conviction should be vacated was not in issue, for in *Wright*-- unlike the present case--the government did not object to vacatur of the deceased

14

appellant's conviction. Although it sought preservation of so much of the sentence as ordered payment of restitution, "*the government argue[d]* that [Mr. Wright's] *conviction and indictment should abate in their entirety . . . .*" *Wright*, 160 F.3d at 908 (emphases added).

Moreover, our *Wright* opinion did not indicate that the abatement doctrine was indivisible. We rejected the government's request for preservation of Mr. Wright's restitution obligation not because of any view that abatement was an all-or-nothing concept, but rather because the district court had ordered that his restitution payments were to begin after his release from prison, "when . . . Mr. Wright will again be in a position to earn a living." *Id*. at 907. As his death meant that payment time would never arrive, we concluded that the restitution obligation must also be abated. And we expressly "le[ft] for another day such questions as whether an order that makes *restitution* payable immediately should *generally* survive the death of a defendant during the pendency of his direct appeal as of right, *and whether the answer to that question should depend on whether the appeal challenges the conviction itself* as well as the order of restitution." *Id*. at 909 (emphases added).

Given that the primary rationale underlying the doctrine of abatement is that a defendant should not stand convicted if his guilt has not been resolved with

finality, and that that interest is served if the defendant, although challenging his sentence, has waived or forgone his right to appellate review of his guilt, we view the reasoning of *Brooks* as applicable to the present case, in which the merits of Mladen's conviction had, as discussed below, already become final and unappealable.

B. *Appealability of a Conviction After a Plea of Guilty*

A defendant is allowed to enter a plea of guilty that is conditional, in that it reserves to him the right to argue a nonjurisdictional contention on appeal, if the government has agreed and the district court has expressly approved. *See, e.g., United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996) ("*Coffin*"); *United States v. Sykes*, 697 F.2d 87, 89 (2d Cir. 1983) ("*Sykes*"); *United States v. Mann*, 451 F.2d 346, 347 (2d Cir. 1971) ("*Mann*"); Fed. R. Crim. P. 11(a)(2). However, it is well established that a defendant who has entered an unconditional plea of guilty has admitted his guilt and has waived his right to raise any nonjurisdictional issues. *See, e.g., Coffin*, 76 F.3d at 496-97 ("unless the defendant specifically reserves the right to appeal" with "the consent of the government" and "the approval of the court," his "knowing and voluntary guilty plea waives all nonjurisdictional defects in the prior proceedings"); *Mann*, 451 F.2d at 347 (dismissing for lack of appellate jurisdiction the appeal of a defendant who had

16

pleaded guilty and sought to argue only issues that were not jurisdictional); *Sykes*, 697 F.2d at 89 (refusing to reach the nonjurisdictional issues raised by a defendant who had pleaded guilty and sought to argue both jurisdictional and nonjurisdictional issues); *United States v. Selby*, 476 F.2d 965, 966-67 (2d Cir. 1973) (stating that the court of appeals lacks "power" to entertain a defendant's appeal on nonjurisdictional grounds after his unconditional plea of guilty).

Mladen was convicted on Count Two of the indictment, pursuant to his plea of guilty. He unequivocally and unconditionally admitted that he had knowingly and willfully made false statements of material facts to United States Marshals in a matter within the jurisdiction of the United States Marshals Service. His Plea Agreement did not reserve any right to challenge the merits of his conviction.

To the contrary, Mladen's Plea Agreement contained a paragraph headed "Waiver of Right to Appeal or Collaterally Attack Conviction and Sentence." (Plea Agreement at 5.) In that paragraph, while he reserved the right to appeal aspects of "the *sentence* imposed" if it exceeded certain levels and the right to "rais[e] a claim of ineffective assistance of counsel in an appropriate forum," Mladen "agree[d] *not to appeal or collaterally attack his conviction in any proceeding*." (*Id*. (emphases added).)

17

Thus, so far from reserving a right to challenge the merits of his conviction, Mladen expressly agreed not to make such a challenge.

And in fact, Mladen's brief on appeal did not challenge the merits of his conviction. Accordingly, even if such a challenge had not already been waived, the merits of Mladen's conviction were not in issue before this Court; thus, our non-review of the merits of his conviction is in no way a consequence of his death. *See, e.g.*, *United States v. DeMichael*, 461 F.3d 414, 417 (3d Cir. 2006) (denying defendant's estate's motion for vacatur of his conviction where his brief on appeal stated that he sought review only of an element of his sentence). "Abating [Mladen's] conviction would grant relief that he did not seek, and that he could not possibly have obtained as a result of his appeal," *id*.

In sum, both by his unconditional plea of guilty and by his express Plea Agreement appeal waiver, Mladen was barred from making an appellate challenge to the merits of his conviction; and he made no such challenge. His appeal could not alter the fact of his conviction. His death during the pendency of the appeal thus does not warrant abatement of his conviction, of the $100 special assessment statutorily mandated for such a conviction, or the count of the indictment on which he was convicted.

CONCLUSION

For the reasons discussed above, we deny so much of the Abatement Motion as seeks vacatur of Mladen's conviction, seeks dismissal of Count Two of the indictment, on which he was convicted, and seeks repayment of the $100 special assessment. As Count One of the indictment has already been dismissed, we deny as moot so much of the Motion as requests that relief. We grant so much of the Motion as requests dismissal of the appeal and a remand to the district court for vacatur of the imposed terms of imprisonment and supervised release, and for entry of an order that the $20,000 fine be repaid to Mladen's estate.

The Abatement Motion is thus granted in part and denied in part; the appeal is dismissed.