19-2975
*United States v. Lopez-Hernandez*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 20ᵗʰ day of October, two thousand twenty.

Present:
> DEBRA ANN LIVINGSTON,
> > *Chief Judge*
> DENNY CHIN,
> > *Circuit Judge*,
> KATHERINE POLK FAILLA,
> > *District Judge.**

UNITED STATES OF AMERICA,

> *Appellee*,

> v.                                                                  19-2975

JOSE EDUARDO LOPEZ-HERNANDEZ,

> *Defendant-Appellant*,

RUDIN LOPEZ-LOPEZ, AKA BENJAMIN LOPEZ-URIZAR,
AKA RUDIN WILFREDO LOPEZ-LOPEZ,

> *Defendant.*

---

\* Judge Katherine Polk Failla, of the United States District Court for the Southern District of New York, sitting by designation.

For Defendant-Appellant:          DANIEL M. PEREZ, Law Offices of Daniel M. Perez, Newton, New Jersey 07860

For Appellee:          PAUL D. SILVER, Assistant United States Attorney, *for* Antoinette T. Bacon, Acting United States Attorney for the Northern District of New York

Appeal from a judgment of the United States District Court for the Northern District of New York (D'Agostino, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Defendant-Appellant Jose Eduardo Lopez-Hernandez appeals the district court's judgment of criminal conviction and sentence of 60 months' imprisonment following his plea of guilty to one count of conspiracy to commit alien smuggling for commercial or private gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(i), (a)(1)(A)(v)(I), (a)(1)(B)(i), and five counts of alien smuggling for commercial or private gain in violation of 8 U.S.C. § 1324(a)(2)(B)(ii).   On appeal, Lopez-Hernandez argues that the district court lacked sufficient factual basis to accept his guilty plea with respect to all counts, as required by Rule 11(b)(3) of the Federal Rules of Criminal Procedure, and that the court did not ensure that he understood the nature of the charges against him, as required by Rule 11(b)(1)(G).   We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

The Court reviews for plain error alleged violations of Rule 11 where the contesting party raises a Rule 11 objection for the first time on appeal.   *United States v. Torrellas*, 455 F.3d 96, 103 (2d Cir. 2006); *United States v. Garcia*, 587 F.3d 509, 515 (2d Cir. 2009) (citing *United States v. Vonn*, 535 U.S. 55, 58–59 (2002)).   To demonstrate plain error, Lopez-Hernandez must establish "that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights; and (4) the error seriously affects

2

the fairness, integrity or public reputation of judicial proceedings." *United States v. Balde*, 943 F.3d 73, 96 (2d Cir. 2019) (quoting *United States v. Bastian*, 770 F.3d 212, 219–20 (2d Cir. 2014)). "Within the context of plea proceedings," Lopez-Hernandez also bears the burden of showing that "there is a 'reasonable probability that, but for the error, he would not have entered the plea.'" *Id.* (quoting *Garcia*, 587 F.3d at 515). Lopez-Hernandez has not demonstrated plain error on either of the alleged Rule 11 violations.

## I.   Factual Basis for the Plea

On April 29, 2019, Lopez-Hernandez entered a guilty plea in the Northern District of New York (D'Agostino, *J.*) to one count of conspiracy to commit alien smuggling for commercial or private gain and five counts of alien smuggling for commercial or private gain in violation of 8 U.S.C. § 1324.[1] Lopez-Hernandez now asserts that he did not "admit[] sufficient facts to establish as a matter of law a violation of alien smuggling." Specifically, he claims that he did not admit to "bring[ing] or attempt[ing] to bring [undocumented individuals] to the United States," and at most, admitted to the crime of "transport[ing undocumented individuals] within the United

---

[1]   Alien smuggling is defined under 8 U.S.C. § 1324(a)(1)(A)(i) as applying to anyone who:

> [K]nowing that a person is an alien, brings to or attempts to bring to the United States in any manner whatsoever such person at a place other than a designated port of entry or place other than as designated by the Commissioner, regardless of whether such alien has received prior official authorization to come to, enter, or reside in the United States and regardless of any future official action which may be taken with respect to such alien.

8 U.S.C. § 1324 also punishes anyone who "engages in any conspiracy to commit" alien smuggling, 8 U.S.C. § 1324(a)(1)(A)(v)(I), and proscribes a mandatory minimum sentence for anyone who commits alien smuggling or conspiracy thereof "for the purpose of commercial advantage or private financial gain," *id.* § 1324(a)(2)(b)(ii).

States," as proscribed in § 1324(a)(1)(A)(ii).    For the following reasons, we conclude that Lopez-Hernandez has failed to establish that the district court plainly erred in determining there was a sufficient factual basis for his plea.

At the plea hearing, the government proffered its evidence against Lopez-Hernandez. The government asserted that it could prove that on August 22, 2018, at around 3:00 A.M., U.S. Border Patrol agents responded to activity near the Canadian border in Chateaugay, New York. Approaching the area, agents observed a vehicle drive north toward the border and then stop about a quarter-mile from the border.    Agents then heard the sound of doors slamming and watched the vehicle drive away from the border.    Agents stopped the vehicle at around 3:12 A.M. when it drove past them.    While the car initially pulled over, it then sped away after the agents exited their vehicle, and agents subsequently lost sight of it.    Around twenty-five minutes later, however, agents responded to a car crash in Ellenburg, New York involving the same vehicle, and encountered two of the car's occupants—undocumented individuals from Romania referred to as A.S. and R.B.—who informed agents that there were multiple people in the car who had fled after the accident.

Agents ultimately found the other occupants of the car—initially finding three other undocumented individuals from Romania (referred to as N.M., A.M., and I.G.), and shortly thereafter finding Lopez-Hernandez and his codefendant Rudin Lopez-Lopez ("Lopez-Lopez")— after reported sightings by concerned citizens.    N.M., A.M., and I.G. admitted to agents that they had entered the United States illegally, and one of the undocumented individuals stated that he "expected to pay $2,000 in exchange for being smuggled into the United States."    App'x at 32. Upon transporting Lopez-Hernandez and Lopez-Lopez to the border patrol station, agents found $2,108 on Lopez-Hernandez's person.    After waiving his *Miranda* rights, Lopez-Hernandez

4

stated that the money was his life savings, that the car seen near the border was his, and that he had driven his car to Burlington, Vermont, at which point Lopez-Lopez had taken over driving. Agents also conducted a search of Lopez-Lopez's cell phone, which revealed text messages between and among Lopez-Lopez, Lopez-Hernandez, and the five other undocumented individuals; several of these text messages indicated, in substance, that Lopez-Hernandez expected to be paid for smuggling aliens into the United States.

After the government had provided its factual recitation of the evidence at the plea hearing, the court asked Lopez-Hernandez whether the evidence accurately reflected "what [he] did and what occurred in this case." App'x at 35. Lopez-Hernandez, through his interpreter, replied, "What I hear from the U.S. Attorney is true, your Honor. What I want to clarify is that I wasn't involved directly a hundred percent from crossing people from Canada into the United States. What I was involved is being with these people who offered me to get some payment to transport these people inside the United States." *Id.* This response triggered a long discussion among all parties about whether Lopez-Hernandez understood that, by pleading guilty, he was knowingly admitting to the crimes of alien smuggling and conspiracy to commit alien smuggling, which involve "*bring[ing]* or attempt[ing] to *bring* [aliens] *to the United States*," as opposed to the crime of "transporting aliens," a separate provision of 8 U.S.C. § 1324. *Compare* 8 U.S.C. § 1324(a)(1)(A)(i) (punishing one who "brings to or attempt to bring [an alien] to the United States"), *with id.* § 1324(a)(1)(A)(ii) (punishing one who knowing "transports, or moves, or attempts to transport or move [an] alien within the United States").

All parties agreed that Lopez-Hernandez was not involved in physically bringing the five undocumented Romanians across the Canadian border and that he had picked them up in New York, a quarter-mile from the border. Lopez-Hernandez's counsel clarified to the court that in

charging Lopez-Hernandez with alien smuggling, as opposed to transporting, the government relied on this Court's decision in *United States v. Aslam*, 936 F.2d 751 (2d Cir. 1991).[2] Counsel continued that he had "explained this to [Lopez-Hernandez] and told him that if he pled guilty," he would likely waive any challenge to *Aslam* on appeal, but that Lopez-Hernandez "wants to accept responsibility for what he did and [if] what he did equals bringing, under the law of the Circuit, then he's guilty of it." App'x at 36.

Lopez-Hernandez now argues that there was an inadequate factual basis for his plea because he was "440 yards away from the border" when he picked up the five Romanian citizens,

---

[2] In *Aslam*, Border Patrol agents arrested defendant Rafique Aslam after "[r]esponding to an alert from [a sensor] device" installed at the border, and observing Aslam make a U-turn in his car "a few yards south of the Canadian border" "at the same time [the agents] saw two men walking south along the road." 936 F.2d at 753. These two men had illegally crossed the Canadian border with a guide shortly before Aslam intended to greet them. *Id.* On appeal, we rejected the district court's view that while Aslam's conduct could support a conviction for "transport[ing]" undocumented individuals "within the United States knowing of their illegal entry," Aslam "was not a person who 'brings to or attempts to bring to the United States' . . . an illegal alien because his conduct did not 'assist[] in the physical ingress [of the aliens] into the United States.'" *Id.* at 753 (alterations in original) (internal citation omitted). We instead agreed with the Government that the relevant statutory language "punishes those who participate in the process of bringing illegal aliens into the United States, and that the offense does not end at the instant the alien sets foot across the border." *Id.* at 755.

Lopez-Hernandez asks that we revisit this holding, citing as reason an *en banc* decision in the Ninth Circuit that held that the "brings to" offense under 8 U.S.C. § 1324 "clearly connotes the act of bringing the alien 'from outside' the country," and "terminates when the initial transporter who brings the alien to the United States drops off the alien at a location in this country." *United States v. Lopez*, 484 F.3d 1186, 1195, 1201 (9th Cir. 2007). But "a panel of [this] Court is 'bound by the decisions of prior panels until such time as they are overruled either by an en banc panel of [this] Court or by the Supreme Court," *United States v. Smith*, 949 F.3d 60, 65 (2d Cir. 2020) (quoting *United States v. Wilkerson*, 361 F.3d 717, 732 (2d Cir. 2004)). Moreover, having concluded that there was a valid and unconditional guilty plea for the reasons set forth herein, we also conclude that Lopez-Hernandez "has waived his right to raise any nonjurisdictional issues." *United States v. Mladen*, 958 F.3d 156, 162 (2d Cir. 2020); *see also Balde*, 943 F.3d at 91 ("[E]ven a defendant's . . . argument that the conduct set out in the indictment does not make out a violation of the charged statute does not implicate subject-matter jurisdiction." (quoting *United States v. Yousef*, 750 F.3d 254, 260 (2d Cir. 2014))).

6

as opposed to a "few yards" as in *Aslam*. He also argues that while Aslam attempted to pick up two undocumented individuals shortly after they walked across the border, his plea allocution contains no information as to how, where, or when the five undocumented individuals crossed the border prior to meeting Lopez-Lopez and Lopez-Hernandez.

We need not determine the temporal or geographic limits of a "bringing in" offense, however, to conclude that the district court did not commit plain error in finding a sufficient factual basis for Lopez-Hernandez's guilty plea to each count here. This Court has stated that "the 'transporting' felony might overlap to some extent" with the crime of "bringing in," while declining to determine the precise geographic or temporal scope of the "bringing in" offense. *Aslam*, 936 F.2d at 755. It was thus certainly not plain error, "subject to [no] reasonable dispute," *Balde*, 943 F.3d at 96 (quoting *Bastian*, 770 F.3d at 219), for the district court to find a quarter-mile sufficiently close to the border to consider Lopez-Hernandez's conduct in assisting the individuals here to be part of the "process of bringing illegal aliens into the United States." *Aslam*, 936 F.2d at 755. The stated evidence that the government had initially responded to activity around 3:00 A.M. near the border, moreover, and then subsequently observed a vehicle drive north, hearing minutes later "what sounded like car doors slamming," was sufficient for the court to determine that, as in *Aslam*, Lopez-Hernandez and Lopez-Lopez had picked up the five undocumented individuals a short period after they had illegally crossed the border.

## II. Understanding the Nature of the Charges

Lopez-Hernandez next argues that the district court failed to fulfill Rule 11(b)(1)(G)'s requirement to "inform the defendant of, and determine that the defendant understands . . . the nature of each charge to which [he] is pleading," Fed. R. Crim. P. 11(b)(1)(G); *see also United States v. Pattee*, 820 F.3d 496, 507 (2d Cir. 2016) ("Rule 11 . . . constitutes a required minimum

7

in assuring that a defendant understands the nature of the charges"). Again, we disagree. While the district court's effort to explain the charges in light of Lopez-Hernandez's statement that he "wasn't involved directly a hundred percent from crossing people from Canada into the United States," was, at points, confusing, Lopez-Hernandez has not demonstrated plain error because he has not established a reasonable probability that, but for the error, he would not have pled guilty. *Balde*, 943 F.3d at 96. Accordingly, this claim also fails.

At the start, defense counsel explained, and the government confirmed, that pursuant to *Aslam*, the government's position was that a defendant need not himself bring an alien across the border in order to be guilty of alien smuggling and conspiracy charges. App'x at 35–36. Defense counsel emphasized that he had thoroughly explained this to his client, and that he had met Lopez-Hernandez and an interpreter some ten times prior to the hearing. *See, e.g.*, *id.* ("The other Circuits in this country have found that transporting is not bringing, but the law in this Circuit as today is this type of transportation is bringing. I've explained this to my client and told him that if he pled guilty, he would likely waive this issue for appeal, could revisit it, but he wants to accept responsibility for what he did and what he did equals bringing, under the law of the Circuit, then he's guilty of it."); *id.* at 39 ("I believe his position, your Honor, is that we have talked at length about this issue, about the word 'bringing' and about how other Circuits disagree with the Circuit but unfortunately he is in this Circuit. He just wants to make it clear to the Court that he did not bring, as English language says, these people into the United States but he understands fully that the reason he's pleading guilty is because the law in this Circuit makes the activity he engaged in equals bringing. . . . And that's why he wants to plead guilty.").

Despite defense counsel's repeated assertions that his client understood the law and why he was pleading guilty, the district court expressed some uncertainty about whether Lopez-

8

Hernandez actually understood the nature of the charge. *See* App'x at 36 ("It does [make sense to me]. I want to make sure that it makes sense to your client because he ended up qualifying after I asked him if that's what he did."); *id.* at 39 ("I think I understand that and you [(defense counsel)] understand it. I just don't know by your client's answers if he understands it and if he –if he doesn't want to take responsibility for that, which the government is requiring that he take responsibility for, then, I mean, perhaps he should have a trial."). But the court's efforts to ascertain Lopez-Hernandez's understanding arguably fell somewhat short. Thus, the court asked Lopez-Hernandez: "I understand, Mr. Lopez-Hernandez, that you did not pick up the aliens . . . in Canada and drive them over the border but do you fully understand that you're pleading guilty to a crime that is taking these aliens and transporting them?" *Id.* at 37–38. But Lopez-Hernandez was not pleading to "a crime that is taking these aliens and transporting," which is a separate crime under 8 U.S.C. § 1324, but to the crime of taking these aliens and *bringing them to the United States*, which, under our holding in *Aslam*, does not necessarily require that the defendant himself bring the aliens across a border. *See Aslam*, 936 F.2d at 755.

On plain error review, however, it is not enough that Lopez-Hernandez demonstrate that the district court's explanation of the charges was at points unclear. "In order to establish that a Rule 11 violation affected 'substantial rights,' the defendant must show 'that there is a reasonable probability that, but for the error, he would not have entered the plea.'" *Pattee*, 820 F.3d at 505 (quoting *United States v. Vaval*, 404 F.3d 144, 151 (2d Cir. 2005)). "If 'the misinformation in all likelihood would not have affected a defendant's decision-making calculus, then the error would be harmless, and the guilty plea need not be vacated.'" *Id.* (quoting *United States v. Harrington*, 354 F.3d 178, 184 (2d Cir. 2004)); *see also United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004).

Here, Lopez-Hernandez does not even address whether there is a reasonable probability that he would have declined to plead guilty had the court not erred (assuming it did err) in explaining the nature of the charges against him. The plea hearing itself, moreover, makes clear that there is no probability of a difference in outcome. The record reflects that Lopez-Hernandez's counsel explained to his client the nature of the charges prior to the plea hearing, and that Lopez-Hernandez knowingly decided to admit guilt. Defense counsel accurately affirmed on the record at the plea hearing that "[t]he government's position is that the act of transporting into the United States near the border equals bringing. They rely upon a 1991 case in this Circuit called *Aslam* . . . . [T]he law in this Circuit as [of] today is this type of transportation is bringing." App'x at 35–36. And counsel was crystal clear that he had "explained this to my client and told him that if he pled guilty, he would likely waive this issue for appeal, could revisit it, but he wants to accept responsibility for what he did and [if] what he did equals bringing, under the law of the Circuit, then he's guilty of it." *Id.* at 36. Counsel later in the hearing reaffirmed that "[Lopez-Hernandez] transferred them once they crossed but it's I believe the U.S. Attorney's position and the Circuit's position that equals bringing. . . . And I advised my client of that and advised him that if he wanted the Circuit to revisit this issue, he should have a trial. *He doesn't want to do that. He wants to admit what he did to you*." *Id.* at 37 (emphasis added). Finally, when the district court asked defense counsel whether Lopez-Hernandez was pleading guilty knowingly, counsel replied, "Yes, your Honor. He understands what he did and he understands what the law is more than most of us, and he didn't bring, as far as the English language and Spanish language goes, but he brought, according to the Second Circuit, and this is his desire to admit what he did to the Court and take responsibility and that's why he's here." *Id.* at 40.

The plea hearing thus establishes that defense counsel provided his client with a reasonable explanation of *Aslam* and informed his client that he could go to trial and ask the court to revisit *Aslam*, but by pleading guilty he would likely be waiving that issue on appeal. Lopez-Hernandez told his counsel that he did not want to have a trial and has not provided any argument on appeal that he would have decided otherwise absent the court's statements during the plea hearing. *See United States v. Lloyd*, 901 F.3d 111, 115 (2d Cir. 2018) (stating that the district court's failure to "articulate the elements of the crime to which [the defendant] was pleading guilty" was a "significant failure" but "nevertheless reject[ing defendant]'s challenge because he has pointed to nothing in the record suggesting that, had the District Court satisfied this element of Rule 11, he would not have pleaded guilty"); *United States v. Caraballo-Rodriguez*, 480 F.3d 62, 76–77 (1st Cir. 2007) ("[E]ven if the district court had erred in its understanding of misprision law, there is nothing in the record to suggest that the defendant would have been willing to risk trial on the conspiracy charges in the absence of the error. [Defendant]'s substantial rights were not affected.") (internal citation omitted)). Defendant-Appellant has thus not met his burden of demonstrating that absent the misstatements at the plea hearing, he would not have pled guilty or been willing to risk trial on the charges against him.

\*    \*    \*

We have considered Defendant-Appellant's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

11